# EXHIBIT A

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO CIVIL DIVISION

APR 08 2021

BY [signature]
SYLVIA GUAJARDO, DEPUTY

TUCKER ELLIS LLP
MARC R. GREENBERG (State Bar No. 123115)
marc.greenberg@tuckerellis.com
MATTHEW I. KAPLAN (State Bar No. 177242)
matthew.kaplan@tuckerellis.com
515 South Flower Street, Forty-Second Floor
Los Angeles, CA 90071
Telephone: 213.430.3400
Facsimile: 213.430.3409

Attorneys for Petitioner
HAZMAT TSDF, INC., formerly known as FILTER RECYCLING SERVICES, INC.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN BERNARDINO

HAZMAT TSDF, INC., formerly known as FILTER RECYCLING SERVICES, INC.,

Petitioner and Plaintiff,

v.

CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL; BILL BECKMAN, in his capacity as Dispute Resolution Official of the California Department of Toxic Substances Control; MARIA SORIA, in her capacity as Division Chief Enforcement and Emergency response Division of the California Department of Toxic Substances Control; BRUCE LaBELL, in his capacity as Dispute Resolution Official of the California Department of Toxic Substances Control; and DOES 1 through 10, inclusive,

Respondents and Defendants.

Case No. CIV SB 2106853

**VERIFIED PETITION FOR WRIT OF MANDATE (TRADITIONAL AND ADMINISTRATIVE) AND COMPLAINT FOR DECLARATORY RELIEF — IMMEDIATE STAY REQUESTED**

Petitioner and plaintiff Hazmat TSDF, Inc., formerly known as Filter Recycling Services, Inc. ("Hazmat"), brings this action to challenge the "Violation Scoring Procedure" regulations adopted by respondent and defendant California Department of Toxic Substances Control ("DTSC") for the assessment and scoring of hazardous waste facilities in connection with permitting decisions, and their specific application to Hazmat by DTSC and its employees, including by defendants and respondents Bill Beckman, Maria Soria and Bruce LaBelle.

## I. INTRODUCTION AND BACKGROUND

1. Hazmat TSDF, Inc. ("Hazmat") is a California corporation located at 180 W. Monte Avenue, Rialto CA 92316. Hazmat is a successful processor, recycler and permitted hazardous waste treatment, transfer and storage facility (TSDF). Hazmat is the very first permitted Appliance Recycler in California, a Materials Recovery facility (MRF) and a member of a National Response Network responding to natural disasters and emergencies spill cleanups.

2. Hazmat provides recycling services for many of the Inland Empire's major employers, recovers raw materials from discarded consumer commodities and offers environmentally friendly options for used oil, oil filters, aerosol cans and other discarded items. Hazmat also has been on the front lines providing such services as COVID-19 decontamination services, clandestine drug lab disposal and Hazwoper exercises for local Riverside and San Bernardino Fire and first responders. Hazmat has been providing the local community, environmental-friendly, high-quality, safe disposal services since 1990. Currently, Hazmat employs more than 100 people, providing support to them and their families.

3. Without its operating permit, over 100 Hazmat employees will lose their jobs. Its owner, Jon Bennet, has invested 32 years and millions of dollars establishing Hazmat and developing its current business, all of which will be lost as well. The loss of the permit will cause an uncontrolled closure of the Hazmat facility, and Hazmat will lose its Closure Cost Fund, approximately $500,000. It will also impact dozens of contractual obligations. The community will lose a needed recycler of used oil and oil filters, as well as the only aerosol can recycler in San Bernardino County, and the loss of the only permitted hazardous waste shredder in the State.

4. Hazmat has a 30 year long history and stellar reputation with all local, City and County Health and Environmental departments. In the past 6½ years Hazmat ***has not*** been cited for a single violation of any hazardous waste management requirement.[1]

5. In the more *distant* past, Hazmat and a state agency called DTSC spent decades arguing

[1] Petitioner was cited for a minor paperwork violation in 2018 and another one in 2019, both of which dealt with financial assurance issues (one year the language on Hazmat's liability insurance certificate did not mirror that of the regulatory language, the other year Hazmat was a month late in providing the annual inflation addition to the required closure cost financial assurance).

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

and litigating over the scope of activities authorized under Hazmat's original permit and DTSC's purported "citations" concerning its handling of water and gasoline mixtures. Hazmat for all intended purposes won every argument and won the litigation wars. Although DTSC refused to admit its errors even after the San Bernardino County Superior Court had ruled that DTSC had "abused their discretion," the dispute was settled without any admission of liability by Hazmat to avoid further litigation and abuse and the costs associated with continued litigation.

6. DTSC now seeks to resurrect the old, resolved citations so that it can illegally impose punishment on Hazmat by way of DTSC's new "VSP Regulations," through which it is pursuing permit revocation and has labeled its operations as "Unacceptable" based on an illogical and improper calculation of Hazmat's 2019 "Final Inspection Violation Score," which rests solely on unproven, time-barred, indefensible *allegations* by DTSC that were the subject of the settlement. It has also labeled Hazmat as a significant non-compliant operator based on this new regulatory program.

7. Hazmat has withstood a constant barrage of abuses by DTSC, literally countless inspections, multiple investigations and even a baseless no-knock warrant within these past 6 ½ years, without even a paperwork violation being alleged against Hazmat, yet DTSC still invents illogical and unsupportable conclusions in a 2019 VSP score that threatens the continued operation of a stable of San Bernardino businesses.

8. Illogically and inconsistently, in calculating Hazmat's 2020 "Final Inspection Violation Score," DTSC classifies Hazmat's operations as "Conditionally Acceptable," yet it ignores this finding as it moves forward punishing Hazmat and seeking permit revocation based on the improper, outdated "Unacceptable" classification from 2019. The actions are personal, vindictive and illegal.

9. By this action, Hazmat seeks a writ of mandate requiring DTSC to classify its operations as "Acceptable" under the VSP Regulations along with a declaration that the VSP Regulations are illegal and unconstitutional on their face and as applied to Hazmat by DTSC. Hazmat also seeks an injunction prohibiting DTSC from taking any further action under the VSP Regulations against Hazmat based on unproven allegations that DTSC abandoned when it agreed to settle those allegations with no admission of liability by Hazmat, and relieving Hazmat of any obligation to further participate in administrative proceedings involving those settled claims and any VSP scores or compliance tier

assignments based on those unproven claims.

10. The litigation wars and the improper 2019 "Unacceptable" and 2020 "Conditionally Acceptable" classifications involve Hazmat's handling of the mixed petroleum/water waste. Hazmat was authorized to accept this waste before it received its ten-year permit effective January 21, 2002. Hazmat was authorized to accept the same wastes under that permit. After the permit was issued, DTSC conducted numerous inspections of Hazmat and made no allegations of mishandling this waste. Things changed in, roughly 2007, when a new inspector got involved with the site, Rick Jones. Jones falsely claimed he got a "complaint" about Hazmat mishandling waste so he could conduct surveillance of the site. In truth, the "complaint" was from Jones himself, and it was based on his mistaken interpretation of language in the permit and belief that Hazmat could not accept water/petroleum mixtures. He began issuing notices of alleged violations and agitating for enforcement actions against Hazmat. But this was never about any alleged release or threatened release by Hazmat, only a dispute over whether the permit language allowed handling the mixed petroleum/water waste. In an attempt to diffuse the issue, in February 2008, Hazmat sought a modification of the permit language so it would reflect what Jones wanted. DTSC delayed the permit modification while it "investigated" this non-issue. Meanwhile, Jones received authoritative information confirming that there were no violations of the permit with its existing language and that Hazmat was free to operate as it had for years without issue:

- In a July 2009 email, the Regional Criminal Enforcement Counsel of the United States Environmental Protection Agency informed Jones that Hazmat's handling of petroleum/water waste ***did not*** violate Federal law (and hence the permit).
- In an August 19, 2009 email, Hazmat's permit writer told Jones that Hazmat ***was authorized*** to accept water contaminated with gasoline under its permit.

Yet Jones persisted, and the permit modification was delayed until the ten-year term of the permit was on the horizon and the modification issue collapsed into consideration of the renewal permit. On June 11, 2011, the permit writer complained to management in an email that Hazmat's permit was held up by Jones and the DTSC Enforcement Unit, asking "WILL THIS PROJECT BE COMPLETED EVER?" and stating "Help needed from the fifth dimension." That help was not forthcoming.

11. On December 4, 2012, Hazmat filed a writ petition in this Court (Case No.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

CIVDS121258) to force DTSC to issue its permit modification. The next day, DTSC filed a civil enforcement action against Hazmat in Los Angeles County Superior Court (Case No. BC496757, the "LA Action"). On April 21, 2014, DTSC finally issued Hazmat its modified permit.[2] The last time DTSC alleged that Hazmat violated any hazardous waste management requirement came less than three months after the modified permit was issued with language that made Jones's objections to the handling of mixed petroleum/water waste moot.[3] Thereafter, DTSC and Hazmat settled the LA Action, with Hazmat agreeing to pay DTSC $500,000 *without admitting any liability* in reference to its handling the mixed petroleum/water waste or any other alleged violation of the permit or governing law. DTSC had already begun drafting the VSP Regulations while the settlement negotiations were ongoing but it did not tell Hazmat about them or about its intent to count the alleged violations being settled in the LA Action as proven "violations" under the VSP Regulations, meaning DTSC defrauded Hazmat into entering into the settlement agreement on the terms that it did. Hazmat believed that these old disputes were resolved by settlement, only to find out that DTSC knew at that time it would seek to punish Hazmat for the unproven allegations using the VSP Regulations then being drafted.

12. In late 2018, DTSC rolled out the final VSP Regulations, effective January 1, 2019. DTSC claims that they were designed to implement reforms dictated by the Legislature to insure that DTSC considered *recent* performance history of hazardous waste facility operators when making permitting decisions for existing facilities. DTSC's VSP Regulations, however, ignored the Legislative directive to adopt regulations that "improve the protectiveness, timeliness, legal defensibility, and enforceability of [DTSC's] permitting program," and instead DTSC adopted a convoluted and complex system that violate the law in numerous ways and retroactively penalized owner/operators for unproven allegations of operational issues that DTSC either did not pursue by enforcement action or which it abandoned during the course of enforcement actions (by dismissal or through settlement with no admission of liability). The Legislature intended that DTSC would look inward to correct itself. Instead, DTSC looks to deputize others to do DTSC's work.

---

[2] The modified permit mooted aspects of the writ petition, although the case proceeded through trial and judgment based on certain permit conditions to which Hazmat objected. This Court upheld Hazmat's objection to some of the conditions and overruled others in a decision issued June 22, 2016.

[3] This July 2014 allegation related to labeling and handing of e-waste and was resolved with no penalty.

13. The VSP Regulations created an annual, rolling ten-year look-back period for consideration of a facility's performance, and assign facilities to one of three compliance tiers: "Acceptable", "Conditionally Acceptable", and "Unacceptable." Unless a permittee is deemed "Acceptable," it is punished. If deemed "Conditionally Acceptable," the permittee is stripped of control of its own business operations; if deemed "Unacceptable," the permittee is both stripped of control of its business operations and forced to defend itself in an administrative hearing at which DTSC will seek to suspend or revoke its permit. These regulations violate the law.

14. Worse, DTSC has not followed its own illegal VSP Regulations, and it is applying them retroactively in a manner that is arbitrary, illogical, punitive, and denies Hazmat and other operators due process of law and violates constitutional protections against *ex post facto* laws. As part of this process, DTSC ignored its governing regulations and internal policies. It has issued inflated "VSP Scores," causing harm to Hazmat and others by improperly placing them in the "Conditionally Acceptable" or "Unacceptable" compliance tiers. This occurred with Hazmat, as DTSC improperly scored the unproven violations resolved in the LA Action, miscounted the number of inspections performed on Hazmat, and misclassified the alleged "citations," all of which occurred beyond the statute of limitations. DTSC's "Dispute Resolution Officers" have also ignored the regulatory review requirements and the law when turning away Hazmat's challenge to its VSP Score.

15. Further, DTSC prejudicially failed to issue timely responses to administrative challenges such that the annual reviews have stacked up on one another, with Hazmat being forced to simultaneously challenge its 2019 designation as an "Unacceptable" operator and DTSC's 2020 finding that it was a "Conditionally Acceptable" operator. Although the 2020 designation makes the 2019 designation moot, DTSC refuses to acknowledge that reality, outrageously telling Hazmat that its "2019 score and tier assignment will be fully addressed following the regulations as the 2020 score and tier assignment has no impact to the 2019 score." In other words, DTSC *admits* that as of the filing of this petition, Hazmat is a "Conditionally Acceptable" operator, yet DTSC is pursuing permit suspension or revocation based on the admitted fiction that it is an "Unacceptable" operator.

16. DTSC's actions violate Hazmat's state and federal constitutional rights to due process and to be free from imposition of excessive fines. Its arbitrary scoring of alleged violations which were

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

resolved by settlement years ago violates the VSP Regulations and deny Hazmat the benefit of the bargain it struck when it resolved the LA Action. By this action, Hazmat seeks reversal of the following arbitrary, unfounded and erroneous decisions of DTSC and its VSP Dispute Resolution Officers:

a. The January 29, 2021 decision of respondent and defendant Bill Beckman as DTSC's VSP Dispute Resolution Officer issued pursuant to California Code of Regulations, title 22, section 66271.53(c)(4) for 2019 regarding Hazmat's "Final Inspection Violation Score;"

b. The 2019 "Final Inspection Violation Score" of 62.21 issued February 5, 2021 to Hazmat by respondent and defendant Maria Soria as DTSC Division Chief, Enforcement and Emergency Response Division;

c. The 2019 compliance tier assignment issued February 5, 2021 by Soria that placed Hazmat in the "Unacceptable" compliance tier for 2019 based solely on the VSP Score of 63.75;

d. The 2020 Final Inspection Violation Score of 36.45, issued by Soria on both February 5, 2021 (before a VSP Dispute Resolution Officer ruled on Hazmat's 2020 Provisional Inspection Violation Score Dispute Document)[4] and on March 8, 2021 (in an identical, redundant and legally irrelevant letter that changed only the reference to the date on which Hazmat submitted its 2020 Dispute Document).

e. The 2020 compliance tier assignment issued by Soria that placed Hazmat in the "Conditionally Acceptable" compliance tier for 2020; and

f. The March 5, 2021 decision of respondent and defendant Bruce LaBelle as DTSC's VSP Dispute Resolution Officer issued pursuant to California Code of Regulations, title 22, section 66271.53(c)(4) for 2020 regarding Hazmat's Final Inspection Violation Score.

---

[4] In an ironic demonstration of DTSC's abject incompetence, inconsistency and arbitrary enforcement, a DTSC Dispute Resolution Official purported to rule on Hazmat's 2020 Dispute Document on March 5, 2021. In a one page letter, DTSC rejected wholesale and without analysis all of Hazmat's arguments and evidence submitted in support of its contentions. As a result, DTSC's 2020 Dispute Resolution Officer reached a *different conclusion* than that of DTSC's 2019 Dispute Resolution Officer on final scores for certain inspections. The 2019 Dispute Resolution Officer granted Hazmat relief for one of the alleged violations from the April 9, 2012 inspection, issuing it "final" 2019 score of 18.75 for event, yet the same alleged violation was scored 22.5 under the untimely ruling for 2020. This ruling also creates a "head's I win, tails you lose" approach for the regulated community, as DTSC repeatedly has informed it that the failure to challenge an individual inspection score in the first instance counts as a waiver of any right to challenge that score in subsequent years.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP
Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

17. In issuing the Final Inspection Violation Scores, DTSC failed to take into consideration that ***all*** of the alleged violations at issue in the VSP Scores were resolved in the LA Action and occurred far outside the longest statute of limitations prescribed in the Hazardous Waste Control Law for enforcement actions, which is five years. In the LA Action, DTSC (i) abandoned and withdrew many of the violations by dismissing them from the case, and (ii) agreed that, despite Hazmat's payment of civil penalties and funding of a Supplemental Environmental Project under a settlement formally reflected in a judicially approved Consent Decree, the violations remained unproven with no admission of liability by Hazmat.

18. Further, the Final Inspection Violation Scores unfairly and unreasonably penalize Hazmat, even though it is undisputed that no risk of harm to human health or safety or the environment was posed by any purported "citation." The conditions observed by DTSC during the inspections that were scored did not constitute violations of applicable hazardous waste management requirements in the first instance and were never proven to exist in any judicial or administrative proceeding. Until proven, an allegation is just that – an allegation. It is arbitrary and capricious for DTSC to punish Hazmat on the basis of unproven allegations, especially ones like those here that occurred outside the statute of limitations.

19. Moreover, not one of the alleged citations rise to the level of a Class I violation because they did not present a significant threat to human health, safety or the environment, or they did not constitute the management of hazardous waste. DTSC also failed to count all compliance inspections, thereby falsely inflating Hazmat's VSP Score by using an incorrect denominator in its formula for determination of the score. And DTSC made several classification and/or adjustment errors in deriving the inspection scores, including erroneous determinations that alleged violations were "repeat" violations warranting upward adjustments, and including inspections beyond the ten-year look-back period allowed by the VSP Regulations.

20. Writ relief is proper and necessary to compel Respondents/Defendants to perform acts which the law specifically enjoins, and because and Respondents/Defendants failed to act in a manner required by law, leaving Hazmat with no adequate legal remedy. Respondents/Defendants proceeded without and/or in excess of jurisdiction and Hazmat was not provided a fair hearing. In addition,

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Respondents/Defendants prejudicially abused their discretion by not proceeding in the manner required by law, and in issuing Final Inspection Violations Scores and compliance tier assignments that are not supported by the findings, and with findings that are not supported by the evidence. The VSP Regulations are unconstitutional and inconsistent with statutory law both on their face and as applied to Hazmat. They deny permitted facilities a fair hearing and due process of law before imposing punishment on them, including as occurred with Hazmat.

21. Petitioner has exhausted its administrative remedies. DTSC did not create any procedure for administrative review of DTSC Dispute Resolution Official decisions or compliance tier assignments, both of which are final when issued. Absent a legal challenge, the arbitrary and erroneous Final Inspection Violation Scores from 2019 and 2020 would remain against the Facility's record and compliance history, including in future DTSC inspection actions and determinations of "repeat" violations (both as to purported violations identified in prior inspections and the purported violations erroneously classified in the Final Inspection Violation Scores). Thus, this action is ripe for judicial review.

22. Accordingly, this Court should issue (i) a writ of mandate commanding Respondents/Defendants to set aside and vacate Hazmat's 2019 and 2020 Final Inspection Violation Scores and compliance tier assignments and remanding the matter to DTSC to re-evaluate and reassign violation scores and compliance tiers in accordance with the law and facts; (ii) a declaration that Respondents/Defendants acted arbitrarily and capriciously in (a) relying on unproven citations for scoring, including those beyond the statute of limitations; (b) classifying the alleged violations as Class I violations within the scope of the VSP Program, (c) classifying alleged violations as "repeat" violations warranting upward adjustment of the Inspection Violation Score, (d) failing to count all compliance inspection when calculating Hazmat's Facility VSP Score, and (e) assigning Hazmat to the "Unacceptable" and "Conditionally Acceptable" compliance tiers for 2019 and 2020, respectively; (iii) a declaration that the VSP Regulations are unconstitutional to the extent that they deprive Hazmat and facility operators like it due process of law to the extent that they rely on and score unproven allegations of misconduct to support compliance tier assignments and the consequences of them, including forced expenditures to conduct auditing and reporting activity, loss of control of operations by empowering

third-party auditors to dictate mandatory operational changes in the business, and participation in additional administrative reviews, and (iv) an immediate stay and permanent injunction prohibiting Respondents/Defendants from proceeding against Hazmat in any way based on the 2019 and 2020 Final Inspection Violation Scores and compliance tier assignments.

## II. THE PARTIES

23. Petitioner and plaintiff Hazmat TSDF, Inc., formerly known as Filter Recycling Services, Inc., is a corporation organized under the laws of the state of California and registered to do business in California. It operates a hazardous waste treatment, transfer and storage facility at 180 W. Monte Avenue, Unit A, Rialto, California (the "Facility") under a permit issued by DTSC.

24. Respondent and defendant DTSC is a department of the State of California, organized and existing under and pursuant to Health and Safety Code, §§ 58000 *et seq.* DTSC is authorized to administer and enforce California's Hazardous Waste Control Law (Health & Safety Code, §§ 25100 *et seq.*) and its implementing regulations (22 Cal. Code Regs., Division 4.5), yet it may not do so in an unlawful manner.

25. On information and belief, respondent and defendant Bill Beckman is an employee of DTSC and serves as a Dispute Resolution Officer for DTSC. Mr. Beckman issued the letter dated January 9, 2021 entitled "Provisional Inspection Violation Score Dispute Document Decision Hazmat TSDF, CAD982444481," in response to the Dispute Document submitted by Hazmat on December 20, 2019. Mr. Beckman's decision constituted DTSC's final determination for Hazmat's 2019 Facility Inspection Violation Score under the VSP Regulations.

26. On information and belief, respondent and defendant Maria Soria is an employee of DTSC and serves as its Division Chief, Enforcement and Emergency Response Division. Ms. Soria issued the February 5, 2021 letter entitled "Notice of Inspection Violations Scores, 2019 Facility Violation Scoring Procedure Score, and 2019 Compliance Tier Assignment," which notified Hazmat of DTSC's final calculation of its 2019 Facility Inspection Violation Score and its assignment to the "Unacceptable" compliance tier based on Mr. Beckman's January 9, 2021 decision. Ms. Soria also issued the February 5, 2021 letter entitled "Notice of Inspection Violations Scores, 2020 Facility Violation Scoring Procedure Score, and 2020 Compliance Tier Assignment," which notified Hazmat of

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

DTSC's final calculation of its 2020 Facility Inspection Violation Score and its assignment to the "Conditionally Acceptable" compliance tier.

27. On information and belief, respondent and defendant Bruce LaBelle is an employee of DTSC and serves as a Dispute Resolution Officer for DTSC. Mr. LaBelle issued the letter dated March 5, 2021, in response to the Dispute Document submitted by Hazmat on November 24, 2020. Mr. LaBelle's decision was supposed to constitute DTSC's final determination for Hazmat's 2020 Facility Inspection Violation Score under the VSP Regulations, but failed to do so since Ms. Soria issued DTSC's final determination for 2020 February 5, 2021.

28. Hazmat does not know the true names or capacities of the respondents/defendants sued as DOES 1 through 10. These parties are sued by these fictitious names pursuant to California Code of Civil Procedure § 474. Hazmat is informed and believes, and on that basis alleges that each of these Respondents/Defendants are responsible in some manner for the events, transactions, arrangements, or occurrences described in this Petition and Complaint and the resulting injuries and damages. This Petition and Complaint will be amended or supplemented to state these defendants' true names and capacities when and if they are ascertained.

29. Hazmat is informed and believes, and on that basis alleges that each of the Respondents/Defendants was the agent, joint venturer, co-conspirator, partner, aider, abettor, or employee of each of the other Respondents/Defendants, and in doing the things alleged in this Petition and Complaint, were each acting within the course and scope of this agency, joint venture, conspiracy, or employment, and with each other's advance knowledge and approval or subsequent ratification.

## III. JURISDICTION AND VENUE

30. This Court has jurisdiction over this action pursuant to Code of Civil Procedure § 1085 or, in the alternative, Code of Civil Procedure § 1094.5, as well as California Constitution, Article VI, § 10 and Code of Civil Procedure §§ 88 and 1060. In addition, Petitioner regularly does business within the jurisdiction of this Court and maintains business locations in this county and within the jurisdiction of this Court. San Bernardino County is also within the jurisdiction of DTSC's regulatory and enforcement authority.

31. Venue is proper in this county and in this Court pursuant to Code of Civil Procedure

TUCKER ELLIS LLP
Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

§§ 392 and 393, in that the real property, facility, activities, and determinations that are the subject of this action, or some part thereof, are located or occurred in San Bernardino County, where the causes of action arose or some part thereof arose as a result of the activities described herein.

## IV. EFFORTS TO REFORM DTSC AND DTSC'S RESPONSE BY CREATION OF THE VSP REGULATIONS

32. California produces more than four billion pounds of hazardous waste every year. At least one hundred thousand businesses generate such waste—from aerospace, computer and chemical companies, to metal shredders, gas stations, plating companies and dry cleaners.[5] It has to go somewhere to be disposed, which is where businesses like Hazmat come in—to handle the waste responsibly.

33. DTSC is the state agency responsible for the operation of California's Hazardous Waste Management Program, its Brownfields and Environmental Restoration Program (site investigation and cleanup), its Safer Products and Workplaces Program, and operation of the state's Environmental Chemistry Lab. As relevant here, DTSC is tasked with inspecting facilities that produce hazardous waste and facilities like Petitioner's that manage waste disposal. DTSC can issue citations for alleged regulatory violations. These allegations are often resolved amicably. If not resolved, however, they can become a matter of administrative, civil or even criminal enforcement proceedings, during which DTSC must *prove* the allegations.[6]

34. DTSC historically has failed to act promptly to enforce compliance, recover penalties or impose other punishments. Felony charges must be filed within three years; misdemeanor charges must be filed within one year; civil actions must be filed within five years; and while not subject to these specific statutes of limitation, administrative actions must be initiated promptly to insure that the alleged violator's due process rights and ability to mount a meaningful defense are not prejudiced. DTSC's "Enforcement Response Policy"[7] explains that the purpose of enforcement is "[t]o assist violators to

---

[5] *See*, GOLDEN WASTELAND REGULATING TOXICS, OR TOXIC REGULATION? By Liza Tucker, Consumer Watchdog, 2013. (https://www.consumerwatchdog.org/golden-wasteland-report.)

[6] When the threat to health, safety or the environment is serious, DTSC can skip issuance of citations and pursue immediate remedies through the courts or administratively.

[7] DTSC Policy No. DTSC-OP-0006, dated January 30, 2009.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

return to compliance and to initiate and complete enforcement actions in a timely process." It has not done so, and as a result Hazmat has been denied its due process and other rights.

35. DTSC is a dysfunctional agency. This is widely known. Over the years, the Legislature and Governor have made numerous attempts to reform the agency so it focuses on actual threats to human health and/or the environment and acts quickly and efficiently to address those threats. In the Background Report prepared for the February 1, 2017 Joint Oversight Hearing Senate Environmental Quality Committee and Budget and Fiscal Review Subcommittee No. 2 on Resources, Environmental Protection, Energy and Transportation hearing for the Department of Toxic Substances Control: Presentation of Independent Review Panel Report, the Senate committee summarized the state of the reform efforts and ongoing failings of DTSC to correct its mismanagement (emphasis added):

> Specific incidents across California have exposed and ***continue to expose glaring failings*** in DTSC's implementation of its core programs as well as its support programs.
>
> The mishandling of the hazardous waste facility permitting and enforcement of first the Exide and now the Quemetco battery recycling facilities;[8] neglected cost-recovery efforts for cleanups across the state leading to an accumulation of 1,661 projects totaling almost $194 million in uncollected cleanup costs dating back 26 years; a growing backlog of applications to renew hazardous waste permits; delayed site remediation; failed public participation and transparency activities; and personnel issues have all led to decreased stakeholder confidence and public trust in DTSC's ability to meet its mandate to protect public health and the environment.
>
> * * *
>
> ***Numerous statutory changes have been made to clarify and strengthen the statute to help DTSC better achieve its mandates***, and budget augmentations have been made to give DTSC the resources to reduce backlogs and address outstanding programmatic failings. However, ***many of the underlying concerns about ... DTSC programs remain***.

36. DTSC's new regulations at issue here—the Violation Scoring Procedure for Hazardous Waste Facility Operations found at Article 3 of Chapter 21 of Division 4.5 of Title 22 of the California

[8] According to an April 24, 2017 report by The California Report on KQED, "The Department left the Exide Plant operate without a fully approved waste permit for 33 years." (*See*, IS CALIFORNIA'S TOXIC WASTE REGULATOR LETTING OVERSIGHT SLIDE, https://www.kqed.org/news/11359491/is-californias-toxic-waste-regulator-letting-enforcement-slide.).

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Code of Regulations, sections 66271.50 *et seq.* (the "VSP Regulations")—were prepared in response to years of public criticism of DTSC. These complaints reached a crescendo of sorts as the devastating community and environmental impacts from DTSC's failure to take timely and effective action against the former Exide Technologies battery recycling facility in Vernon and the Kettleman Hills Hazardous Waste Facility in Kings County became widely known.[9] Something had to change.

37. In 2014, Senator Kevin de León introduced a bill in response to DTSC's Exide Technologies and Kettleman Hills catastrophes, seeking to standardize DTSC permitting decisions and require hard deadlines for processing permit applications (Senate Bill 812). Exide had operated for years without a permit. The bill analysis prepared for the first hearing on this bill by the Senate Committee on Environmental Quality details DTSC's embarrassing history of failed oversight of Exide and the resulting impact on the environment and the community around the Exide facility, which is still contaminated today. SB 812 was passed by the Legislature but Governor Edmund Brown vetoed it, telling the Legislature in his veto message that he believed that the bill would "unintentionally delay the [DTSC's] current plan to revise its program and complete its review of expired permits." Undeterred, and with DTSC having made no progress reforming itself, in 2015 the Legislature again acted to reform DTSC.

38. On January 9, 2015, the Senate Committee on Budget and Fiscal Review introduced Senate Bill 83 (Stats. 2015, Ch. 24), which addressed a number of environmental issues, including DTSC's backlog of permit and enforcement actions. It passed and was approved by the Governor on June 24, 2015. Among the provisions addressing DTSC was one that created "an independent review panel, comprising three members, to review and make recommendations regarding improvements to the department's permitting, enforcement, public outreach, and fiscal management." (The Background Report quoted in Paragraph 35 was prepared in connection with the IRP's 2017 report.)

39. On February 27, 2015, two more pieces of legislation were introduced, both of which focused directly on DTSC's hazardous waste program and were in response to the Governor's veto of SB-812: Assembly Bill 1075 (Stats. 2015, Ch. 460, authored by Luis Alejo) and Senate Bill 673 (Stats.

[9] In contrast to Exide or Kettleman Hills, Petitioner has ***no history*** of discharges, spills, releases or threatened discharges, spills or releases.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

2015, Ch. 611, authored by Ricardo Lara). These pieces of companion legislation were presented to the Governor on September 17 and 16, 2015, respectively, and were signed into law on October 2 and 8, 2015, respectively.

40. AB 1075 had three components: (i) it eliminated the requirement that a hearing be held before suspending a permit when DTSC determined that conditions may present "an imminent and substantial endangerment to health, safety or the environment;" (ii) it increased penalties on repeat violators; and (iii) it established a new definition of "violation" and "noncompliance" and specified that it would be a compelling cause to deny, suspend or revoke a permit when a person was *found liable for, or convicted of*, three or more violations or instances of noncompliance within a *five year period*. In the Bill Analysis for the April 14, 2015 hearing of the Assembly Committee on Environmental Safety and Toxic Materials, it explained in the comments section:

> *Need for the bill:* According to the author, "AB 1075 establishes a bright regulatory line for permit denial and revocation. The key feature of AB 1075 is to strengthen the authority of the Department of Toxic Substance Control (DTSC) by specifying that three or more serious violations during a five-year period results in a clear obligation on DTSC to revoke a hazardous waste facility permit. AB 1075 was developed based on the information gathered at the Environmental Safety and Toxic Materials oversight hearing in September of 2014, where community groups came forward to report on issues in their neighborhood."

41. SB 673 required DTSC to establish or update criteria for use in determining whether to issue a new, modified or renewed hazardous waste facilities permit, and required DTSC to develop and implement programmatic reforms designed to improve the protectiveness, timeliness, legal defensibility, and enforceability of the department's permitting program.[10] In the Bill Analysis for the July 14, 2015 hearing of the Assembly Committee on Environmental Safety and Toxic Materials, it explained in the comments section:

> *Need for this bill:* According to the author, "Recent high profile cases involving permitted facilities such as the Exide Technologies battery

[10] "In early 2012, DTSC launched the 'Fixing the Foundation' initiative to address issues that threatened DTSC's ability to achieve its mission and to ensure accountability." (*See*, FIXING THE FOUNDATION: RESTORING PUBLIC TRUST IN DTSC, https://assets.documentcloud.org/documents/3468895/Fixing-the-Foundation-WP.pdf.) DTSC itself identified these same programmatic reforms as goals it would achieve, yet it failed to do so. (*Id.*)

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

> recycling facility in Vernon, CA, and the Kettleman Hills Hazardous Waste Facility in Kings County have raised significant environmental justice concerns from the communities surrounding the facilities and have led to criticism of the department's permitting procedures and responsiveness to community concerns."

42. These statutes were an attempt to reform DTSC to make it more efficient and accountable for current, ongoing, pollution and contamination. They statutes ***did not*** authorize DTSC to pursue permit revocation for a facility based on unproven citations that are statutorily time-barred by the five-year statute of limitations for judicial enforcement actions, and that do not satisfy the conditions of AB 1075 (three or more final adjudications of liability/convictions within a five-year period). These new regulations threaten revocation of Petitioner's permit (and those of other hazardous waste facility operators) based on a complex system of rating citations issued over a ten—not five—year period to determine whether DTSC should initiate permit revocation or suspension proceedings. In addition to ignoring the Legislature's mandate that a five year look-back period was appropriate, the VSP Regulations score and hold against operators alleged violations that were never proven, including alleged violations that DTSC dismissed and/or abandoned during the course of contested enforcement proceedings and alleged violations that were settled without any admission of liability or wrongdoing by the operator, and they go far beyond the legislative mandate by imposing requirements not contemplated or authorized by AB 1075 or SB 673. Worse yet, DTSC's new regulations turn a blind-eye to whether a facility is operating well today!

**A. The VSP Regulations**

43. DTSC promulgated the VSP Regulations pursuant to SB 673, in which the Legislature directed DTSC to adopt regulations establishing or updating criteria for hazardous waste permit decisions. SB 673 as proposed, adopted and codified at Health and Safety Code section 25200.21, directs DTSC to adopt regulations "for the issuance of a new or modified permit or renewal of a permit, which may include criteria for the *denial or suspension* of a permit." The VSP Regulations were initially proposed on September 22, 2017. After substantial public comment and further regulatory review, the final regulations were issued November 2, 2018, with an effective date of January 1, 2019. These regulations apply to existing permitted hazardous waste facilities, except for those facilities solely

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

authorized under a post-closure permit or order, or a permit or permit modification for closure only.

44. In violation of the Legislature's directive to adopt regulations providing for the "denial or suspension of a permit," the VSP Regulations purport to grant DTSC the authority to pursue *revocation* of a permit. (*See e.g.*, Section 66271.50(e).)[11] This is improper and illegal.

45. Beginning with 2019, DTSC must issue an annual "Facility VSP Score" to each covered facility by September 30 of each year. (Section 66271.54(c).) The "Facility VSP Score" is determined by adding all final "inspection violation scores" for each "compliance inspection" conducted over the preceding ten years, divided by the total number of compliance inspections performed over that ten-year period. (Section 66271.54(a).) Under this new paradigm, each inspection score is critically important as it stays on a facility's record for ten years absent a successful challenge, and it is used in calculating ten years' worth of Facility VSP Scores—scores which determine a facility's annual compliance tier assignment and may form the basis for the imposition of penalties, including potentially permit suspension or revocation.

46. With regard to a facility's compliance tier assignment: (1) a VSP Facility Score of less than 20 results in an automatic assignment to the "Acceptable" compliance tier; (2) a VSP Facility Score higher than 20 but less than 40 results in an automatic assignment to the "Conditionally Acceptable" compliance tier; and (3) a VSP Facility Score of 40 or higher results in an automatic assignment to the "Unacceptable" compliance tier. (Section 66271.54(b).) "Acceptable" and "Conditionally Acceptable" compliance tier assignments are final and not subject to further administrative review. (Section 66271.54(e).)

47. DTSC retroactively assigned scores for every alleged violation during the period January 1, 2009 – December 31, 2018. Prior to the new VSP Regulations, no such scoring was performed or contemplated and, therefore, facility owners and operators had little incentive to litigate every citation alleged by DTSC because, in many cases, the matters could be resolved with a permit amendment or corrective measure. Indeed, a facility had no opportunity to challenge alleged violations that merely were cited by DTSC with paperwork prepared and no further government activity taking place. Thus, "violations" dating back to 2009 might not have been relevant in the first instance, but these alleged

[11] Section references are to Title 22 of the California Code of Regulations unless otherwise noted.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

citations ceased to have legal significance once the five-year statute of limitations expired. The VSP Regulations have, however, resurrected these stale events and DTSC is using them in violation of the law to impose consequences, including potentially permit revocation, on Hazmat and others as alleged herein. On information and belief, the scoring of these stale violations was performed by DTSC employees that, in many cases, did not conduct the inspections at issue and/or have any knowledge of the events because they are outdated.

48. Significantly, issues identified during inspections while labeled "violations" by DTSC are anything but, as both the Hazardous Waste Control Law and DTSC's own internal inspections policy makes clear. Health and Safety Code § 25185 governs DTSC inspections. It requires inspectors to provide operators a written summary of "all violations *alleged by* the inspector" at the end of an inspection, and to provide an inspection report that "fully detail[s] … all *alleged violations*" within 65 days of completion of the inspection. (Health & Saf. Code § 25185(c)(1) (emphasis added).) The operator has a right to respond to the allegations, and DTSC is required to respond in writing within 30 days and state in a "report of violation or other appropriate document" whether the allegation stands. (Health & Saf. Code § 25185(c)(3).) Should DTSC fail to provide such a response, it "may not seek penalties for continuing violations or any alleged new violation" until it renders a final decision. (Health & Saf. Code § 25185(c)(3).) DTSC's internal policy entitled "DTSC Policy for Conducting Inspections" (Policy No. DTSC-OP-0005 dated January 30, 2009), mirrors this approach. Nevertheless, DTSC is improperly treating alleged violations cited by an inspector as conclusively established and scoring these alleged violations under the VSP Regulations in a manner that deprives Hazmat and other operators due process of law. DTSC has illegally promoted themselves to prosecutor, judge and jury by treating every unproven allegation dating back ten years as a conviction.

49. On a going forward basis, DTSC inspectors are to notify operators of the individual scores for each alleged violation "concurrently with the inspection report provided to the owner or operator." (Section 66271.53(b)(1).) For inspections that occurred before adoption of the VSP Regulations, however, DTSC notified the operator of the score for each alleged violation when it provided the "Provisional Inspection Violation Score" in September 2019. (*See* Section 66271.53(b)(2) and Section 66271.54(c).) During a webinar about the VSP Regulations that took place after the 2019

provisional scores were issued, DTSC told operators that they had to challenge each of the individual provisional inspection scores issued in 2019 or forever lose the right to challenge these individual scores in future years. There is no language in SB 673 or the VSP Regulations that support this interpretation, however, and it amounts to an illegal "underground" regulation that violates Government Code § 11342.2 and cases such as *In re Edwards* (2018) 26 Cal.App.5th 1181.

**B. Scoring of Alleged Violations and Calculation of Facility VSP Score**

50. Under the VSP Regulations, only individual "Class I" violations may be scored: "The Department shall ***only consider Class I violations***, as defined in section 66260.10, for purposes of calculating the Facility VSP Score in accordance with this article." (Section 66271.50(c) (emphasis added).) In turn, Section 66260.10 defines a Class I violation to mean: "a deviation from the requirements [of the law and/or permit documents] that represents a significant threat to human health or safety or the environment, because of" specified circumstances, or "that is significant enough that it could result in a failure to:" assure hazardous waste is delivered to an authorized facility; prevent releases of hazardous waste or constituents during facility operation or closure; assure early detection of a release; assure adequate financial resources are available in case of a release or to pay for facility closure; or perform emergency clean-up or corrective action. In other words, the VSP Regulations prohibit the scoring of alleged violations that do not represent a ***significant threat*** to human health, safety or the environment. Yet as alleged herein, DTSC ignored its own regulations and scored numerous violations that do not qualify as Class I violations under the law. And, as noted, the inspections being scored under the VSP Regulations in most cases were never proven—as is the case with Hazmat.

51. The VSP Regulations established a highly subjective numeric ranking program for the purported "violations" that translates alleged "Class I" violations to a numeric score. (*See* Section 66271.51.) The alleged violations are graded for (i) potential harm to human health, safety or the environment, and (ii) the extent of deviation from hazardous waste management requirements. In both cases, the alleged violation is classified as either "major," "moderate," or "minimal," and a matrix is consulted which dictates the numeric score (*e.g.*, an alleged violation with a "major" risk of harm but

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

minimal deviation from waste management requirements counts as 15 points).[12] (*Id.*) DTSC then applies upward "adjustment factors" if the alleged violation is a repeat violation, which can increase the score by 25, 50 or 100% depending on the number of repeated occurrences. (Section 66271.52.) However, DTSC is prohibited from counting any violation that has "been cancelled, retracted, withdrawn, or successfully challenged in an administrative or judicial proceeding." (Section 66271.52(b).) DTSC has improperly used unproven alleged violations as the predicate for making upward scores adjustments for "repeat" violations, and it has made upwards adjustments for "repeat" violations using alleged violations that were abandoned by it.

52. The VSP Regulations define the terms "major," "moderate," and "minimal" for each of the criteria, but they fail to provide clear or constitutionally valid criteria for assigning any alleged violation for "risk of harm" to any of the three categories. Specifically, Section 66271.51(b)(1)(A) defines a "major" potential for harm tautologically, as one that "present[s] a major threat to public health and safety or the environment and the circumstances of the violation indicate a high potential for harm" based on the substances involved. A "moderate" potential for harm is defined as one that does not present a major threat, "but the threat is more than minimal." (Section 66271.51(b)(1)(B).) The definition for "minimal" threat returns to the tautological approach, defining it as one that "present[s] a minimal threat to public health and safety or the environment and the circumstances of the violation indicate a low potential for harm" based on the substances involved. (Section 66271.51(b)(1)(C).) Guidance is provided for evaluating the "potential harm" from the deviation, but that too uses subjective factors:

> In determining the degree of potential harm, the Department shall consider the following factors:
>
> (A) The characteristics of the substance involved;

[12] This new matrix is set forth at Section 66271.51(d) and is reproduced here:

| | | Potential Harm | | |
|---|---|---|---|---|
| Extent of Deviation | | Major | Moderate | Minimal |
| | Major | 25 | 20 | 15 |
| | Moderate | 20 | 15 | 6 |
| | Minimal | 15 | 6 | 2 |

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

(B) The amount of the substance involved;

(C) The extent to which human life or health is threatened;

(D) The extent to which animal life is threatened;

(E) The extent to which the environment is threatened; and

(F) The extent to which potable water supplies are threatened.

These subjective factors result in the unequal and inconsistent application of the scoring criteria by DTSC employees, violating the equal protection and due process rights of permittees guaranteed under the United States Constitution, the California Constitution, as well as the statutory and regulatory guarantees of equal protection provided under the Hazardous Waste Control Law (*i.e.*, Health & Safety Code § 25180(d) and Section 66272.60(c)). In fact, on information and belief, the first DTSC employee that prepared Hazmat's 2019 Provisional Inspection Violation Score placed it in the "Acceptable" compliance tier. DTSC could not let that stand, however, and DTSC removed him from participation in the Hazmat matter before his score was sent to Hazmat and assigned another employee to prepared a replacement 2019 Provisional Inspection Violation Score—one that put Hazmat in the "Unacceptable" compliance tier.

53. As noted, Scores for individual inspections must be adjusted upward if they constitute repeat violations: 25% for a second violation, 50% for a third violation, and 100% for the fourth or any additional violations. (Section 66271.52(c).) These adjustments, however, can only be imposed where a facility received a "summary of violations" identifying the same issue within the last three years, or last three inspections, whichever period is longer, subject to the ten-year look back period. (*See* Sections 66271.51(a) and 66271.52(b).) In violation of its rights, DTSC illegally used alleged violations older than ten years in calculating Hazmat's 2020 Facility VSP Score, and improperly adjusted upwards subsequent alleged violations as repeat violations based on the earlier alleged violations that were more than ten years old.

54. Under the VSP Regulations, no violation can be scored—whether as a repeat violation or otherwise—if DTSC abandoned the alleged violation before it was proven. Specifically, Section 66271.54(a)(2) states, with added emphasis: "The score for any Class I violation ***that has been cancelled, retracted, withdrawn, or successfully challenged in an administrative or judicial***

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

***proceeding may not be included*** in the Facility VSP Score." (*See also*, Section 66271.52(b) (addressing repeat violations with identical language).) Nonetheless, Respondents/Defendants have improperly included in Hazmat's Final Facility VSP Scores alleged violations that DTSC dismissed during the course of a civil judicial enforcement action and alleged violations that were settled without any admission of liability (*i.e.*, the LA Action). Failing to exclude the violations resolved in the LA Action resulted in DTSC improperly inflating Hazmat's 2019 and 2020 provisional inspection scores above zero, resulting in invalid scores of 62.21 for 2019 and 36.45 for 2020.

55. To arrive at a Facility VSP Score, all of the individual scores for each alleged violation over the prior ten years are totaled and divided by the number of compliance inspections that took place during the prior ten year period. (Section 66271.54(a).) Thus, proper identification of each "compliance inspection" is essential in determining a Facility VSP Score, since that score is calculated *by dividing* the provisional inspection scores by the total number of compliance inspections. The term "compliance inspection" is defined in Section 66271.50(a)(1) as follows (with added emphasis):

> Compliance inspection" means *an evaluation* of a hazardous waste facility's compliance with any operating hazardous waste management requirements set out in statute, regulation, permit, order, stipulation, agreement, settlement document, judgment, decree, grant of authorization issued by the Department, or other document establishing requirements upon operations at the facility. "Compliance inspection" includes, but is not limited to, scheduled and unscheduled inspections by the Department. A "compliance inspection" may last more than one day.

When adding up inspections, however, Respondents/Defendants ignored the plain language of this definition as well as its own Inspections Policy, DTSC-OP-0005 (January 30, 2009), and improperly and illegally inflated Hazmat's Facility VSP Score and its compliance tier assignment. DTSC failed to count at least nine inspections performed of Hazmat when calculating the 2019 Facility VSP Score—DTSC used a denominator of 7, when it should have used 16. For the 2020 Facility VSP Score, DTSC failed to count 6 inspections and improperly used a denominator of 5, when it should have used 12.

### C. Challenges to Provisional Inspection Violation Scores and Compliance Tier Assignments

56. According to DTSC, the VSP Regulations "encapsulate the totality of the criteria and

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

steps that govern the consideration of a facility's compliance history by DTSC in making specified permit decisions and the remedies available to an owner or operator in response to decisions proposed or made by DTSC." (https://dtsc.ca.gov/violations-scoring-procedure/.) The numeric scores assigned for each individual inspection, therefore, can only be challenged through the VSP Regulations. (Section 66271.53.) Following DTSC's issuance of an annual "provisional inspection violation score," a facility operator has sixty days to file an administrative challenge to the scores by submitting a "Dispute Document" under Section 66271.53. "Within *ninety (90) days after receipt of a Dispute Document*, the dispute resolution official *shall issue* a written decision granting or denying, in whole or in part, the relief sought by the owner or operator." (Section 66271.53(c)(4) (emphasis added).) The VSP Regulations make clear that the decision of the Dispute Resolution is the final decision as to a Facility VSP Score: "The written decision of the dispute resolution official is the Department's final decision and is not subject to additional administrative dispute resolution." (*Id.*) In this case, DTSC's response to Hazmat's 2019 Dispute Document was not issued until *thirteen months* after it was submitted, which as alleged below, deprived it of its rights and caused it harm.

57. The final inspection violation score determined by DTSC's dispute resolution official ***is***, effectively, the compliance tier assignment because those tiers are based ***solely*** on the numeric score. (Section 66271.54(b).) Compliance tier assignments of "Acceptable" or "Conditionally Acceptable" are also final agency actions subject to no further administrative review. (Section 66271.54(e).) The VSP Regulations purport to provide a process for further administrative review for an "Unacceptable" compliance tier assignment, but that review is illusory because owner/operators are required to implement punishment imposed on "Conditionally Acceptable" owner/operators in an impossibly short 60-day time frame just to exercise the right of appeal.

58. Specifically, Section 66271.57(c) of the VSP Regulations gives operators 60 days to file an appeal of an "Unacceptable" compliance tier assignment. To do so, subdivision (d) of Section 66271.57 provides that the operator "must demonstrate, in writing," five things: (1) they can operate the facility in compliance with all environmental laws and permits (2) the facility, "as constructed," can be operated in compliance with all environmental laws and permits; (3) the continued operation of the facility is unlikely to adversely affect health, safety or the environment, (4) the facility is in compliance

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

with financial assurance and liability coverage for closure and post-closure purposes, and (5) "[a]t least one audit report required pursuant to this article demonstrates both of the following: (A) an ongoing pattern of compliance with applicable hazardous waste management requirements; and (B) full implementation of actions to correct deficiencies and address findings of prior audits."

59. The only audits discussed in Article 3 of Chapter 21 of Title 22 of the California Code of Regulations are the audits required of facilities assigned to the "Conditionally Acceptable" compliance tier. Accordingly, the VSP Regulations automatically impose the punishment reserved for "Conditionally Acceptable" operators on alleged "Unacceptable" operators and require those presumed innocent operators to perform the punishment just to exercise their rights of appeal. And that punishment—the audit requirement—is both draconian and literally impossible to perform within the 60-day time frame DTSC allows for an Unacceptable operator to file an appeal. As such, the VSP Regulations on their face deny Hazmat and other operators due process of law.

60. The VSP Regulations also deprived Hazmat due process and its other legal rights through the way DTSC applied the regulations against Hazmat. Specifically, DTSC's delay in issuing a Dispute Resolution Officer decision on Hazmat's 2019 Dispute Document—an abuse that is compounded by DTSC's refusal to recognize that the 2020 compliance tier assignment of "Conditionally Acceptable" moots the 2019 "Unacceptable" designation. DTSC is arbitrarily, unfairly and illegally forcing Hazmat to endure punishments reserved for Unacceptable operators even though it concedes Hazmat is not an "Unacceptable" operator based on its 2020 findings, including punishment consisting of (i) the forced participation in a "public meeting regarding the facility's 'Unacceptable' compliance tier assignment" at which Hazmat will be shamed and defamed for its purported misconduct based solely on unproven, withdrawn and settled allegations, (ii) the costs for implementing changes to its facility and operations dictated by a third-party "auditor," despite no allegations of misconduct ever having been proven, and (iii) the burdens of a permit revocation or suspension proceeding. (*See* Section 66271.57(d) – (f)).

**D. DTSC"'s Unconstitutional Imposition of Punishment and Taking of Property By "Auditing"**

61. The facility audit requirements are set out in Section 66271.56. Regardless of whether they are applied to an operator designated "Conditionally Acceptable" or "Unacceptable," the audit

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

requirements are illegal and unconstitutional and deprive permittees of their property without either compensation or due process of law in violation of both the state and federal constitutions, as they divest operators of control of their business operations, giving that control to a third-party auditor, DTSC itself, or some combination of the two.

62. Only auditors approved in writing by DTSC may conduct an audit. (Section 66271.56(a)(1)(A)(2).) If an operator fails to propose an auditor acceptable to DTSC, then DTSC choses the auditor and the operator is required to retain and pay that person to conduct the audit. (Section 66271.56(a)(1)(A)(4)-(5).) DTSC essentially deputizes hand selected auditors to perform the work of DTSC, at the expense of the operator. The auditors are beholden to DTSC because their income depends on DTSC's personal approval of them. The auditors will also be motivated to keep the operator in the "Conditionally Acceptable" tier to maintain their livelihood. This is an inappropriate abdication of DTSC's function, albeit one that will create new employment opportunities for DTSC retirees.

63. Under the VSP Regulations, the process of just proposing auditors and obtaining DTSC approval can last as long as 105 days until the auditor is retained and working—well past the 60 days for an "Unacceptable" operator to submit an appeal that includes submission of the results of the audit. But even assuming DTSC approved selection of an auditor right away, even in less than a week from issuance of the "Unacceptable" compliance tier assignment, the operator could not submit a timely appeal because Section 66271.56(a)(1)(A)(5) requires that the appeal include both the results of the audit and a "full implementation of actions to correct deficiencies." This is a process that, under the VSP Regulations themselves, takes well more than one year to complete, thus the regulation are facially invalid.

64. Under Section 66271.56(a)(1)(C), a facility has to conduct one audit within 270 days of auditor selection, and a second audit between six months and one year after the initial report is complete. Following each of these audits, the operator must submit for approval by DTSC "a corresponding implementation plan" setting forth how it will "correct all deficiencies and address all findings of the auditor." (Section 66271.56(a)(1)(C)(2).) Once approved by DTSC, the activities listed in the "implementation plan" become "enforceable commitments." (Section 66271.56(b).) The operator has no ability to object to or refuse to implement any recommendations made by the auditor, so it loses

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

control of its business. The operator must change its operations to satisfy the auditor and DTSC, which changes can involve extensive capital investment to change facility design, equipment and operations and/or employees.

65. The audit process is an outrageous and illegal taking of property in violation of law. It is not a mere review of operations and reporting of findings and recommendations. Rather, it is functionally a complete takeover of facility operations by the auditor and DTSC. The loss of control starts at the auditor selection phase since DTSC has absolute discretion on auditor selection. It does not matter how much the auditor may charge an owner/operator, whether in the abstract or as opposed to other qualified auditors. It does not matter how an auditor may conduct themselves personally while interacting with an operator and its employees, or whether there is any history between the auditor and operator that might make use of DTSC's selected auditor inappropriate. For example, DTSC could force Hazmat to hire Jones under this provision if he retired from DTSC—despite Jones having both misapplied Hazmat's permit in the past and, as uncovered through discovery in prior litigation between Hazmat and DTSC, despite Jones's having initiated his own "complaint" in order to work the Hazmat file and his attempts to illegally entrap Hazmat by having generators intentionally send material to Hazmat that he believed Hazmat could not accept to create "violations." An operator must use the auditor DTSC chooses. And it must design a "compliance implementation plan" to make operational changes to address every finding made by the auditor. It has no choice but to implement that plan once it is approved by DTSC.

## V. HAZMAT'S VSP SCORES, DISPUTE RESOLUTION OFFICER RULINGS AND COMPLIANCE TIER ASSIGNMENTS

### A. Hazmat's 2019 VSP Score (2009 – 2018)

#### 1. Provisional 2019 Score and Hazmat's Dispute Document

66. On September 27, 2019, DTSC issued to Hazmat its 2019 provisional inspection violation score and scoring "matrix" listing each of the inspections and individual violations scored by DTSC. They covered the ten-year period 2009 through 2018.[13] DTSC gave Hazmat a provisional

[13] A true and correct copy of Hazmat's 2019 Provisional Inspection Violation Scoring Notice and Matrix is attached as Exhibit A.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Facility VSP Score of 63.75, which automatically would place it in the "Unacceptable" compliance tier. The score was purportedly based on seven inspections occurring, according to DTSC, on the dates and given the provisional violation inspection scores listed below:

i. 6/29/09 CEI and 6/30/09 FRR (3 alleged violations; provisional score of 70.00);

ii. 9/28/09 FUI[14] (10 alleged violations; provisional score of 190.25);

iii. 11/16/09 FCI (no violations);

iv. 4/9/12 FUI (8 alleged violations; provisional score of 178.50);

v. 6/24/14 CI (no violations);

vi. 7/2/14 CEI and 8/20/14 FRR (1 alleged violation, provisionally scored 7.5);

vii. 4/6/18 FRR (no violations).

As noted, the scores for the individual alleged violations were not generated contemporaneously with the inspections at issue and, on information and belief, were generated sometime in 2019 when DTSC prepared Hazmat's 2019 provisional inspection violation score. Further, on information and belief, these scores do not reflect Hazmat's true provisional scores, as those scores were developed by the first DTSC employee who placed Hazmat in the "Acceptable category," yet DTSC improperly rejected his calculations and generated and served Hazmat with these false scores. That the first DTSC employee generated an initial set of scores suggests one of two things, both of which prove DTSC's VSP Regulations and their implementation are illegal: (i) the criteria for scoring alleged violations are hopelessly and unconstitutionally vague and undefined, such that they cannot be applied consistently by DTSC employees, or (ii) DTSC intentionally generated false scores for Hazmat in order to place it in the Unacceptable compliance tier so it could pursue permit revocation, despite Hazmat's exceptional regulatory compliance during the past six-plus years.

67. On December 20, 2019, Hazmat submitted its Dispute Document challenging the 2019 provisional inspection violation scores.[15] Hazmat challenged globally various categories of alleged violations, as well as individual violation scores, and DTSC's improper inflation of the score by failing

[14] Erroneously identified by DTSC on its matrix as "6/29/09 FUI."

[15] A true and correct copy of Hazmat's 2019 Dispute Document is attached as Exhibit B and incorporated by reference.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

to count all compliance inspections when computing the denominator to be used in calculating the score under Section 66271.53(a). Specifically, Hazmat's Dispute Document proved that Hazmat's score should be zero (or drastically reduced), based on the following:

i. Settlement of the LA Action Prohibited Scoring All Inspections. All of Hazmat's violations were covered by the settlement agreement in the LA Action and cannot be scored under the VSP Regulations themselves (Section 66271.54(a)(2)) and other provisions of the law reflected in cases such as *Doran v. North State Grocery, Inc.* (2006) 137 Cal.App.4th 484, *Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668, 677, *Los Angeles County v. Law Bldg. Corp.* (1967) 254 Cal.App.2d 848, 853-854, and *Gorman v. Holte* (1985) 164 Cal.App.3d 984, because the settlement acts as a merger and bar to claims based on the settled allegations. Hazmat also pointed out that in both of the public webinars conducted by DTSC on October 21, 2019 about the VSP Regulations and their operation, DTSC told the public that violations resolved by settlement would ***not*** be scored. Importantly, these webinars were held ***after*** DTSC issued its initial set of provisional inspection violation scores under the VSP Regulations (2019) and addressed the requirements for filing a Dispute Document challenging provisional scores. DTSC employee Rizgar Ghazi said the following in those webinars:

• Afternoon: "DTSC did not score violations that have been cancelled by the department or retracted, or withdrawn successfully to a challenge in administrative or judicial proceedings, *or through a settlement negotiation*."

• Evening: "So DTSC did not score any violations that were canceled, retracted, withdrawn or successfully challenged in an administrative or judicial proceeding *or through settlement negotiations*. Those are the ones that *we excluded* because of during the administrative or settlement process they might have been - there might have been some additional information that has come to light that was then evaluated as the part of the settlement negotiations."

ii. Alleged Violations Dismissed from the LA Action Before Settlement Cannot be Scored. Prior to settling the LA Action, DTSC withdrew a number of violations (146.25 points on the provisional score) when it dismissed those violations during the course of litigation in the LA

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Action. DTSC dismissed its Fourth and Tenth Causes of Action in the operative Second Amended Complaint on the eve of trial but before the settlement was consummated. There is no rational ground to refuse to recognize these violations as having been successfully challenged by Hazmat and unscorable under the VSP program.

iii. DTSC's Failed to Count all Compliance Inspections. DTSC failed to include all compliance inspection in its calculation, improperly inflating Hazmat's Facility VSP Score. At least nine inspections were not counted by DTSC. DTSC failed to count a March 28, 2018 inspection reflected in DTSC's own records, and it did not count an August 26, 2009 inspection for which Hazmat has inexplicably seen no paperwork from DTSC (although Hazmat has signatures of the inspectors that did the inspection on its visitor log). DTSC also failed to count secret inspections, four of which were uncovered during discovery conducted in the LA Action (on information and belief, DTSC conducted other secret inspections not counted when calculating its score).[16] DTSC further improperly counted as a single inspection multiple inspections which were written up in a single inspection report by DTSC staff, and improperly combined as single inspections distinct inspections defined as such under DTSC policy (Financial Records Reviews and Compliance Evaluation Inspections). Section 66271.50(a)(1) defines "compliance inspection" and that definition must be followed. While an inspection might last more than a day, it "means *an evaluation* of a hazardous waste facility's compliance with any operating hazardous waste management requirements set out" under the law. The definition includes both "scheduled and unscheduled inspections." And DTSC's internal Inspections Policy (DTSC-OP-0005, January 30, 2009) identifies and lists seven unique types of

[16] The secret inspections and ones for which Hazmat has not seen any paperwork were all performed in violation of the law and DTSC's Inspection Policy, DTSC-OP-0005 (dated January 30, 2009). Health and Safety Code § 25185(c)(1) requires that an inspector, "*prior to leaving the facility*," deliver "a written summary of all violations alleged by the inspector" to the operator. The Inspection Policy requires delivery to the operator at the end of an inspection a "Summary of Observations" if no violations are observed, a "Summary of Violations" if violations are encountered, or a "Notice of Violation" if violations are observed that pose a serious threat to health, safety or the environment. Hazmat was not given any of these documents for the phantom inspections. DTSC's failure to provide notice of the alleged violations from the phantom inspections denied Hazmat due process of law, as it was denied an opportunity to dispute the alleged violations in accordance with DTSC's Inspections Policy, which explicitly requires an inspector to include in an inspection report a discussion of an operator's response to a SOV, and in violation of Health and Safety Code § 25185(c)(3), which provides an operator an opportunity to dispute violations identified in an inspection report.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

inspections,[17] yet DTSC ignored these distinctions when issuing VSP inspection violation scores. The decision to combine multiple inspections as one was not a mistake. DTSC broadcast its intent to disregard its policies and the regulatory definition of "compliance inspection" during the October 21, 2019 webinars. DTSC's failure to apply the law as written and failure to follow its own policies is egregious behavior, and imposes arbitrary and capricious burdens on Hazmat and others. Hazmat's inspection violation score should have been divided by 16 inspections when calculating its 2019 Facility VSP Score, not 7.

iv. None of the Alleged Violations Scored By DTSC Were Class I Violations. The definition of a Class I violation in both DTSC's regulations and in its Inspections Policy preclude scoring any of the violations alleged against Hazmat. As noted, only Class I violations can be included in a Facility VSP Score. Section 66260.10 defines a Class I violation as on "that represents a significant threat to human health or safety or the environment." The 2009 Inspections Policy required inspectors to leave a "Notice of Violation" with an operator before leaving a site every time he/she encountered a situation that "pose[d] a serious threat to health and safety of the public or environment." Since DTSC never left an NOV with Hazmat, it follows that none of the conditions observed during the inspections constituted a Class I violation that could be scored under the VSP Regulations. The scoring of these violations years after-the-fact by DTSC denied Hazmat due process and violated the law and regulations.

v. Hazmat's Alleged Violations Are Stale, Barred by the Statute of Limitations, Laches and Due Process. As discussed above, all enforcement actions under the Hazardous Waste Control Law are subject to, at the latest, a five-year statute of limitations. Further, the Legislature's reforms of DTSC set forth in AB 1075 and SB 673 required DTSC to use a 5-year look-back when adopting regulations and implementing programmatic reforms to improve DTSC's permitting review and processing performance, making the VSP Regulations invalid as exceeding the scope of the authorizing statutes (not only because of the five-year limitation but also because they did not authorize permit revocation under the VSP program). Here, all of the

[17] DTSC issued a revised inspection policy in 2017 with the same policy number, DTSC-OP-0005. The updated policy identifies ten unique types of inspections. It does not apply to the issues here since all of the inspections of Hazmat scored by DTSC took place before this policy was revised.

violations scored by DTSC occurred more than five years before DTSC issued its 2019 Provisional Inspections Violations Score. In addition to being barred directly by the statutory limitations period, scoring these old violations and using them to impose punishment is barred by the doctrine of laches, and to do so would violate Hazmat's due process rights and the prohibition on *ex post facto* laws set forth in both the state and federal constitutions, as the consequences of DTSC's conduct is to impose punishments that are penal in nature.

vi. Class II Violation Improperly Scored as Class I. DTSC's Dispute Resolution Officer (Beckman) agreed with this objection and eliminated on alleged violation initially scored with 2 points from the final inspection score.

vii. None of the Scored Violations Were Class I Violations Because they Did Not Involve Management of Hazardous Waste. To receive a score, a Class I violation must be rated for both its "potential for harm" and "extent of deviation from hazardous waste management requirements." (Section 66271.51(a).) If it is not possible to classify an alleged violation using the regulatory definitions of "major," "moderate," or "minimal" for either of these factors, then the VSP score necessarily must be zero because the violation cannot be fit into the table matrix for determining scores set forth in Section 66271.51(d). Fully half the violations scored by DTSC—eleven violations—cannot be scored at all for the "extent of deviation" factor because they did not involve "hazardous waste management" as defined in Section 66260.10, which provides: "'hazardous waste management' means the handling, storage, transportation, processing, treatment, recovery, recycling, transfer and disposal of hazardous waste." The activities falling within the scope of this definition are all hands-on activities, requiring active human engagement with the waste; they do not cover mere paperwork errors or the other activities described by DTSC in its 2019 provisional inspection violation score matrix for Hazmat.[18]

viii. Improper Score Inflation of Individual Alleged Violations. Each of the twenty-two alleged violations scored by DTSC was improperly calculated, as DTSC failed to properly apply

[18] The inspections which do not qualify as Class I violations include two of the three alleged violations from the June 2009 inspections, six of the ten alleged violations from the September 2009 inspection, and three of the eight alleged violations from the April 2012 inspection of Hazmat.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

the VSP Regulations, making the errors identified above as well as others such as applying adjustment factors and scoring inconsistently, and applying upward adjustment factors for repeat violations when there were no repeat violations. For example, DTSC designated identical alleged violations occurring on different days under the "potential for harm" axis of the scoring matrix as being both "major" and "moderate" or both "major" and "minimal." The same activity cannot properly be classified in different categories merely because they occurred on different dates, or were observed by different inspectors (or the score calculated by different DTSC employees). Hazmat was unaware at the time of filing this Dispute Document that another DTSC employee had already scored Hazmat in the Acceptable compliance tier, but this fact further confirms the arbitrary and inconsistent scoring and VSP Regulations.

ix. Constitutional Concerns. DTSC's enforcement and implementation of the VSP Regulations has been inconsistent and constitutionally deficient. Hazmat is being punished for matters that it settled in the LA Action. Forcing Hazmat to go through the scoring process is imposing penalties on it and effectuating a taking of its property without due process of law and in violation of Hazmat's equal protection rights, and the imposition of *ex post facto* penalties.

**2. Final 2019 Score and Hazmat's Compliance Tier Assignment**

68. Despite the ninety-day deadline for issuing a Dispute Resolution Officer decision of Section 66271.53(c)(4), DTSC did not follow the law and did not rule on this challenge for more than a year: Beckman's decision was dated January 29, 2021.[19] It came out four months *after* DTSC issued Hazmat's 2020 provisional violation score, and two months *after* Hazmat submitted its Dispute Document challenging the 2020 provisional score. As a result, Hazmat was subjected to an unfair, arbitrary and capricious process whereby it has been forced to spend money and file serial challenges to the same DTSC errors to preserve its appeal rights, which it did as discussed below.

69. As for the substance of the ruling, Beckman failed to address all of Hazmat's arguments and, for those he did, was arbitrary, capricious, and failed to properly apply the law or the facts to the issues. For example, he did not address the fact that the same activity received different scores due to it

[19] A true and correct copy of the Beckman's decision as Dispute Resolution Officer for 2019 is attached as Exhibit C.

being classified differently for "potential for harm" based on it occurring on different dates or being observed or scored by different DTSC employees, nor did he address Hazmat's constitutional arguments or its challenges to the validity of the VSP Regulations, asserting arbitrarily and incorrectly that they were beyond the scope of authority of a Dispute Resolution Officer and that a Dispute Document is not the appropriate method by which to challenge the VSP Regulations. The responses to the ten categories identified above can be summarized as follows:

i. Settlement of the LA Action Prohibited Scoring All Inspections. The Dispute Resolution Officer argued that the unproven violations are subject to scoring because they were not "specifically cancelled, retracted, withdrawn or successfully challenged in an administrative or judicial proceeding." He further argued that the settlement does not mean that the alleged violations did not occur, and argued that the violation scoring procedure and punishments imposed under it do not count as an "enforcement action" or reopening of resolved disputes. And the Dispute Resolution Official does not acknowledge or address the fact that findings from inspections are merely allegations of the existence of a violation, as made clear by Health and Safety Code § 25185 and DTSC's Inspections Policy.

ii. Alleged Violations Dismissed from the LA Action Before Settlement Cannot be Scored. Remarkably, the Dispute Resolution Officer argued that dismissal of causes of action during the course of a civil enforcement action prior to settlement of that litigation does not constitute a rescission of the alleged violation.

iii. DTSC's Failed to Count all Compliance Inspections. The Dispute Resolution Officer argued: that DTSC's letter stating that it was able to inspect some but not all parts of Hazmat's facility did not establish that a compliance inspection took place that had to be counted for VSP scoring; that the failure of DTSC employees to keep or maintain records of an inspection in violation of DTSC Inspections Policy means that no inspection took place, because they may have been at Hazmat but not inspecting it; that sampling on site at Hazmat by DTSC employees may not have been for the purpose of evaluating Hazmat's compliance and therefore do not constitute inspections for purposes of VSP scoring; that Financial Review Records inspections are not compliance inspections for purposes of violation scoring when combined with other types

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

of inspections, notwithstanding DTSC Inspections Policy defining them as separate inspections; that multiple inspections written up in a single report count as a single inspection despite the definition of compliance inspection in the regulations and non-compliance with DTSC's Inspections Policy in providing written documentation to Hazmat following the on-site inspections, and that the two-year delay in preparing a report means it was "extremely delayed" but is not indicative of multiple inspections; that DTSC's failure to provide timely post-inspection documentation (both at the end of the inspection and in post-inspection reports) and any negative impact that may have had on Hazmat's ability to respond to the alleged violations is beyond the scope of the Dispute Resolution Officer's task.

iv. None of the Alleged Violations Scored By DTSC Were Class I Violations. The Dispute Resolution Officer argued that, while the definition of Class I violation in Section 66260.10 requires a deviation from legal requirements "that represents a significant threat to human health or safety or the environment," there is no requirement that a deficiency "pose a serious threat to the health and safety of the public or the environment" to be classified as a Class I violation.

v. Hazmat's Alleged Violations Are Stale, Barred by the Statute of Limitations, Laches and Due Process. The Dispute Resolution Officer argued that the Dispute Document is not the appropriate method by which to challenge the VSP Regulations and beyond the scope of the Dispute Resolution Official's review. He also argues that the VSP Regulations were adopted, and that the score itself is not punitive and that there is a possibility that the compliance tier would not be "Unacceptable" despite his decision and, in any event, Hazmat can challenge an Unacceptable assignment through other procedures.

vi. Class II Violation Improperly Scored as Class I. The Dispute Resolution Officer agreed with Hazmat on this and eliminated on alleged violation initially scored with 2 points from the final inspection score.

vii. None of the Scored Violations Were Class I Violations Because they Did Not Involve Management of Hazardous Waste. The Dispute Resolution Officer argued that recordkeeping and paperwork are hazardous waste management activities.

viii. Improper Score Inflation of Individual Alleged Violations. The Dispute Resolution

Officer addressed each of the twenty-two individual inspections that were scored. He repeated the arguments above as they applied to each one, and deleted one alleged violation for not constituting a Class I violation and reduced another by finding DTSC had not established prior violations to justify an upward adjustment for a repeat violation.

ix. Constitutional Concerns. The Dispute Resolution Officer argued that the VSP Regulations were adopted under the Administrative Procedures Act and that claims against and challenges to the regulations were beyond the scope of his review and that the Dispute Document was not the appropriate method by which to challenge the VSP Regulations.

Hazmat's Final Facility VSP Score was reduced by 1.54 points by Dispute Resolution Officer Beckman, from 63.75 to 62.21, but Hazmat remained in the Unacceptable compliance tier.

70. On February 5, 2021, respondent/defendant Soria issued Hazmat's 2019 Final Inspection Violation Score and compliance tier assignment. Hazmat was given a final Facility VSP Score of 62.21 and, as dictated by Section 66271.54(b), it was notified that it was assigned to the Unacceptable compliance tier.[20]

**B. Hazmat's 2020 VSP Score (2010 – 2019)**

**1. Provisional 2020 Score and Hazmat's Dispute Document.**

71. On September 30, 2020, DTSC issued to Hazmat its 2020 provisional inspection violation score and matrix listing the inspections and alleged violations counted in the scoring.[21] They covered the ten-year period 2010 through 2019. DTSC gave Hazmat a provisional Facility VSP Score of 37.20, which would place it in the "Conditionally Acceptable" compliance tier. The score was purportedly based on five inspections occurring, according to DTSC, on the dates and given the provisional violation inspection scores listed below:

i. 4/9/12 FUI (8 alleged violations; provisional score of 178.50)

ii. 6/24/14 CI (no violations)

iii. 7/2/14 CEI and 8/20/14 FRR (1 alleged violation, provisionally scored 7.5)

[20] A true and correct copy of the February 5, 2021 letter from Defendant Soria is attached as Exhibit D.

[21] A true and correct copy of Hazmat's 2020 Provisional Inspection Violation Scoring Notice and Matrix is attached as Exhibit E.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

iv. 4/6/18 FRR (no violations)

v. 6/18/19 CEI and 6/26/10 FRR (no violations)

In other words, the 2009 inspections fell off matrix as they were outside this ten-year period, with DTSC adding inspections from 2019 for a complete ten year time frame. While the 2019 inspections resulted in Hazmat not being assessed any numerical score since no violations were observed during those inspections, DTSC again improperly combined inspections in a manner that falsely inflated Hazmat's Facility VSP Score.

72. On November 24, 2020, Hazmat submitted its Dispute Document challenging the 2020 provisional inspection violation scores.[22] Since (i) by the time Hazmat had to file its challenge to the 2020 provisional score no DTSC Dispute Resolution Official had issued a decision on Hazmat's 2019 Dispute Document, and (ii) the only alleged violations that were given a numerical score on the 2020 provisional score were inspections that were discussed in the 2019 Dispute Document, Hazmat submitted a Dispute Document that attached and incorporated its pending 2019 Dispute Document. As noted, in violation of the VSP Regulations, DTSC failed to respond to Hazmat's 2020 Dispute Document until after it issued Hazmat's Final Facility VSP Score and compliance tier assignment.

73. On February 5, 2021, defendant/respondent Soria issued DTSC's final determination for 2020 on Hazmat's Facility VSP Score and compliance tier assignment, scoring it with 36.45 points and placing it in the compliance tier of Conditionally Acceptable.[23] The issuance of these final determinations was improper, arbitrary and illegal, as they were issued prematurely and prior to any decision by a Dispute Resolution Officer.

74. On March 5, 2021, defendant/respondent LaBelle issued DTSC's 2020 Dispute Resolution Officer's decision.[24] He did not independently consider any arguments or facts offered by Hazmat, asserting only that "the inspections at issue in the Dispute Document are already final pursuant to the Provisional Inspection Violation Score Dispute Document Decision HAZMAT TSDF,

[22] A true and correct copy of Hazmat's Dispute Document for the 2020 VSP Score is attached as Exhibit F.

[23] A true and correct copy of Soria's February 5, 2021 Final Facility VSP Score and Compliance Tier assignment letter is attached as Exhibit G.

[24] A true and correct copy of LaBelle's March 5, 2021 letter is attached as Exhibit H.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

CAD982444481, dated January 29, 2021 and not subject to dispute and therefore it is not subject to additional administrative dispute resolution."

75. On March 8, 2021, defendant/respondent Soria issued a second letter purporting to notify Hazmat of DTSC's 2020 decision, but the letter was virtually identical to the letter issued by Soria on February 5, 2021—the only difference was Soria correcting the date of Hazmat's 2020 Dispute Document in the second-to-last sentence of the 3rd full paragraph of the letter, changing December 20, 2019 to correctly reflect Hazmat's submission of its Dispute Document on November 24, 2020.[25]

76. This determination for 2020 is mistaken for a number of reasons. First, each of the scored alleged violations and the Facility VSP Score carried over each of the mistakes set forth above concerning Hazmat's 2019 score. Second, the adjustments made by the Dispute Resolution Officer that ruled on the 2019 challenge were not carried through by DTSC on the 2020 challenge, resulting in an improper 2020 Facility VSP Score. Third, DTSC failed to properly apply the ten-year lookback under the VSP Regulations, such that some violations were scored as repeat violations even though there was no identical prior violation.

77. Hazmat has no plain, speedy, and adequate legal remedy in the ordinary course of law to challenge DTSC's rulings, including that of the Dispute Resolution Officer regarding the 2019 and 2020 Facility VSP Scores, and the associated automatic compliance tier assignments of "Unacceptable" and "Conditionally Acceptable," respectively, other than the relief sought in this petition.

**CAUSES OF ACTION**

**First Cause of Action for Writ of Mandate**

**(Traditional and, alternatively, Administrative Mandate Against DTSC, Beckman and DOES 1 through 5 – January 29, 2021 Dispute Resolution Officer Ruling re 2019)**

78. Petitioner incorporates by reference Paragraphs 1 through 77, as though fully set forth below.

79. DTSC, Beckman and DOES 1 through 5 proceeded without, or in excess of, jurisdiction, and committed a prejudicial abuse of discretion, with the issuance of the Dispute Resolution Officer's

---

[25] A true and correct copy of Soria's March 8, 2021 Final Facility VSP Score and Compliance Tier assignment letter is attached as Exhibit I.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

ruling on Hazmat's 2019 Dispute Document, which automatically placed Hazmat's facility into the "Unacceptable" compliance tier designation. *See* Cal. Code Civ. Proc. § 1094.5(b). DTSC proceeded without and in excess of it jurisdiction and prejudicially abused its discretion. They also have failed to act in a manner required by law, leaving Hazmat with no adequate legal remedy. *See* Cal. Code Civ. Proc. § 1085.

80. The Dispute Resolution Officer's final ruling blessed the inclusion and scoring of alleged violations at issue in the LA Action that were dismissed and/or settled before trial with no admission of liability, which both deprived Hazmat of the benefit of its settlement agreement, at substantial cost to Hazmat, and improperly converted the alleged violations settled in that case into scorable final violations for VSP purposes, contrary to the agency's burden to prove the existence of a violation.

81. The Dispute Resolution Officer's final ruling defied statutory limitations by allowing DTSC to score time-barred and stale alleged violations from beyond the five-year statute of limitations period, and in contravention of the legislative directives authorizing the VSP Regulations.

82. The Dispute Resolution Officer's final ruling defied statutory limitations by allowing DTSC to score stale alleged violations from beyond the five-year period authorized by the Legislature when it directed DTSC to adopt regulations to implement programmatic reforms.

83. The Dispute Resolution Officer's final ruling defied statutory and regulatory limitations by including and scoring violations that were never proven and were only alleged by DTSC, including application of upward score adjustments for alleged repeat violations.

84. The Dispute Resolution Officer's final ruling defied statutory and regulatory limitations by including and scoring alleged violations that did not qualify as Class I violations.

85. The Dispute Resolution Officer's final ruling erroneously combined and/or discarded additional no-violation compliance inspections from the scoring process, which would have improved Hazmat's 2019 Final Facility VSP Score and automatic tier classification for 2019.

86. The Dispute Resolution Officer's final ruling summarily rejected Hazmat's constitutional challenges to DTSC's application of the VSP regulations to it, resulting in the denial of due process. As alleged herein, these defects include but are not limited to improper and inconsistent application of subjective regulations for scoring the so-called "extent of deviation" and "potential for harm" for alleged

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

violations, and the improper scoring of alleged violations for which Hazmat was denied a fair opportunity to challenge due to delayed notice to Hazmat of DTSC's allegations resulting from DTSC's failure to provide required post-inspection documentation (or untimely provision of that documentation).

87. The substantial delay in the Dispute Resolution Officer's final ruling precluded meaningful review by Hazmat and an opportunity to redress alleged violations for the subsequent year's 2020 VSP score, which placed Hazmat in the "Conditionally Acceptable" compliance tier.

88. As a result of the erroneous, arbitrary, and vindictive application of the VSP Regulations to Hazmat, and the lack of timely and meaningful administrative review, Hazmat has been denied property interests without due process, suffered regulatory takings without just compensation, and subjected to improper *ex post facto* laws.

**Second Cause of Action for Writ of Mandate**

**(Traditional and, alternatively, Administrative Mandate Against DTSC, Soria and DOES 1 through 5 – February 5, 2021 Final Facility VSP Score re 2019)**

89. Petitioner incorporates by reference Paragraphs 1 through 88, as though fully set forth below.

90. DTSC, Soria and DOES 1 through 5 proceeded without, or in excess of, jurisdiction, and committed a prejudicial abuse of discretion, with the issuance of Hazmat's 2019 Facility VSP Score, which automatically placed Hazmat's facility into the "Unacceptable" compliance tier designation. See Cal. Code Civ. P. § 1094.5(b). They also have failed to act in a manner required by law, leaving Hazmat with no adequate legal remedy. See Cal. Code Civ. Proc. § 1085.

91. The 2019 Facility VSP Score improperly included alleged violations from the LA Action that were dismissed and/or settled before trial and with no admission of liability, which both deprived Hazmat of the benefit of its settlement agreement, at substantial cost to Hazmat, and improperly converted the alleged violations settled in that case into scorable violations for VSP purposes, contrary the agency's burden to prove the existence of a violation.

92. The 2019 Facility VSP Score defied statutory limitations by allowing DTSC to score time-barred and stale alleged violations from beyond the five-year statute of limitations period, and in contravention of the legislative directives authorizing the VSP Regulations.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

93. The 2019 Facility VSP Score defied statutory limitations by allowing DTSC to score stale alleged violations from beyond the five-year period authorized by the Legislature when it directed DTSC to adopt regulations to implement programmatic reforms.

94. The 2019 Facility VSP Score defied statutory and regulatory limitations by including and scoring violations that were never proven and were only alleged by DTSC, including application of upward score adjustments for alleged repeat violations.

95. The 2019 Facility VSP Score defied statutory and regulatory limitations by including and scoring alleged violations that did not qualify as Class I violations.

96. The 2019 Facility VSP Score erroneously combined and/or discarded additional no-violation compliance inspections from the scoring process, which would have improved Hazmat's Facility VSP Score and automatic tier classification for 2019.

97. The 2019 Facility VSP Score deprived Hazmat of due process of law as alleged herein by setting arbitrary scores using defective vague regulatory definitions for scoring the so-called "extent of deviation" and "potential for harm" for alleged violations, the improper scoring of alleged violations for which Hazmat was denied a fair opportunity to challenge due to delayed notice to Hazmat of DTSC's allegations resulting from DTSC's failure to provide required post-inspection documentation (or untimely provision of that documentation), and by failing to account for Hazmat's other constitutional challenges to the application of the VSP Regulations to it.

98. The substantial delay in issuing Hazmat's 2019 Facility VSP Score precluded meaningful review by Hazmat and an opportunity to redress alleged violations for the subsequent year's 2020 VSP Score, which placed Hazmat in the "Conditionally Acceptable" compliance tier.

99. As a result of the erroneous, arbitrary, and vindictive application of the VSP Regulations to Hazmat, and the lack of timely and meaningful administrative review, Hazmat has been denied property interests without due process, suffered regulatory takings without just compensation, and subjected to improper *ex post facto* laws.

**Third Cause of Action for Writ of Mandate**

**(Traditional and, alternatively, Administrative Mandate Against DTSC, Soria and DOES 1 through 5 – February 5, 2021 Compliance Tier Assignment re 2019)**

100. Petitioner incorporates by reference Paragraphs 1 through 99, as though fully set forth below.

101. DTSC, Soria and DOES 1 through 5 proceeded without, or in excess of, jurisdiction, and committed a prejudicial abuse of discretion, by assigning Hazmat to the "Unacceptable" compliance tier for the 2019 VSP program review. *See* Cal. Code Civ. Proc. § 1094.5(b). They also have failed to act in a manner required by law, leaving Hazmat with no adequate legal remedy. *See* Cal. Code Civ. Proc. § 1085.

102. The "Unacceptable" compliance tier designation rested upon a Facility VSP Score that illegally included scores based on unproven alleged violations at issue in the LA Action that were dismissed and/or settled before trial with no admission of liability, which both deprived Hazmat of the benefit of its settlement agreement, at substantial cost to Hazmat, and improperly converted the alleged violations settled in that case into scorable final violations for VSP purposes, contrary the agency's burden to prove the existence of a violation.

103. The "Unacceptable" compliance tier designation, by resting on a flawed Facility VSP Score, defied statutory limitations by allowing DTSC to score time-barred and stale alleged violations from beyond the five-year statute of limitations period, and in contravention of the legislative directives authorizing the VSP Regulations.

104. The "Unacceptable" compliance tier designation, by resting on a flawed Facility VSP Score, defied statutory limitations by allowing DTSC to score stale alleged violations from beyond the five-year period authorized by the Legislature when it directed DTSC to adopt regulations to implement programmatic reforms.

105. The "Unacceptable" compliance tier designation, by resting on a flawed VSP score, defied statutory and regulatory limitations by including and scoring violations that were never proven and were only alleged by DTSC, including application of upward score adjustments for alleged repeat violations.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

106. The "Unacceptable" compliance tier designation, by resting on a flawed VSP score, defied statutory and regulatory limitations by including and scoring alleged violations that did not qualify as Class I violations.

107. The "Unacceptable" compliance tier designation, by resting on a flawed VSP score, erroneously combined and/or discarded additional no-violation compliance inspections from the scoring process, which would have improved Hazmat's 2019 Final Facility VSP Score and automatic tier classification for 2019.

108. The "Unacceptable" compliance tier designation, by resting on a flawed VSP score that failed to account for Hazmat's constitutional challenges as alleged herein, denied Hazmat due process of law.

109. The "Unacceptable" compliance tier designation deprives Hazmat of its due process and other rights by requiring Hazmat to implement punishments merely to exercise the right to mount an administrative challenge to that compliance tier assignment, violations which are compounded by the impossibly short timeline allowed to complete the "audit" and implement facility changes, all of which must be completed before, and documentation reflecting the completion of these costly activities included with, an administrative challenge to the compliance tier designation.[26]

110. As a result of the erroneous, arbitrary, and vindictive application of the VSP Regulations to Hazmat, and the lack of timely and meaningful administrative review, Hazmat has been denied property interests without due process, suffered regulatory takings without just compensation, and subjected to improper *ex post facto* laws.

**Fourth Cause of Action for Writ of Mandate**

**(Traditional and, alternatively, Administrative Mandate Against DTSC, Soria and DOES 6 through 10 – 2020 Final Facility VSP Score)**

111. Petitioner incorporates by reference Paragraphs 1 through 77, as though fully set forth below.

112. DTSC, Soria and DOES 6 through 10 proceeded without, or in excess of, jurisdiction,

[26] On information and belief, it will cost Hazmat more than $15,000 just to complete one of the VSP audits. Implementing the corrective actions dictated by the auditor will cost even more.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

committed a prejudicial abuse of discretion, and denied Hazmat a fair hearing, with the issuance of Hazmat's 2020 Facility VSP Score, which automatically placed Hazmat's facility into the "Conditionally Acceptable" compliance tier designation. *See* Cal. Code Civ. Proc. § 1094.5(b). They also have failed to act in a manner required by law, leaving Hazmat with no adequate legal remedy. *See* Cal. Code Civ. Proc. § 1085.

113. Hazmat's 2020 Facility VSP Score was illegally and prematurely issued by DTSC, Soria and DOES 6 through 10, prior to any ruling by a Dispute Resolution Officer on Hazmat's 2020 Dispute Document. The issuance of the March 8, 2021 Soria letter that corrected the date on which Hazmat submitted its 2020 Dispute Document, though issued after the Dispute Resolution Officer's decision, does not correct the failings inherent in the score having initially been issued on February 5, 2021. Hazmat already had been issued its final score and compliance tier assignment before the Dispute Resolution Officer's decision, and there was no correction of any of errors in the February 5 ruling.

114. Hazmat's 2020 Facility VSP Score improperly included alleged violations from the LA Action that were dismissed and/or settled before trial and with no admission of liability, which both deprived Hazmat of the benefit of its settlement agreement, at substantial cost to Hazmat, and improperly converted the alleged violations settled in that case into scorable violations for VSP purposes, contrary the agency's burden to prove the existence of a violation.

115. The 2020 Facility VSP Score defied statutory limitations by allowing DTSC to score time-barred and stale alleged violations from beyond the five-year statute of limitations period, and in contravention of the legislative directives authorizing the VSP Regulations.

116. The 2020 Facility VSP Score defied statutory limitations by allowing DTSC to score stale alleged violations from beyond the five-year period authorized by the Legislature when it directed DTSC to adopt regulations to implement programmatic reforms.

117. The 2020 Facility VSP Score defied statutory and regulatory limitations by including and scoring violations that were never proven and were only alleged by DTSC, including application of upward score adjustments for alleged repeat violations. Further, Hazmat's 2020 Facility VSP Score included upwards adjustments for alleged repeat violations based on unproven alleged violations dating back longer than the ten-year look-back allowed under the VSP Regulations.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

118.    The 2020 Facility VSP Score defied statutory and regulatory limitations by including and scoring alleged violations that did not qualify as Class I violations.

119.    The 2020 Facility VSP Score erroneously combined and/or discarded additional no-violation compliance inspections from the scoring process, which would have improved Hazmat's Facility VSP Score and automatic tier classification for 2020.

120.    The 2020 Facility VSP Score failed to account for rulings made in Hazmat's favor by the 2019 Dispute Resolution Officer. The substantial delay in issuing Hazmat's 2019 Facility VSP Score precluded meaningful review by Hazmat and an opportunity to point out favorable rulings when it filed its 2020 Dispute Document, and denied it the opportunity to redress alleged violations for the 2020 Facility VSP Score. Despite the absence of any applicable statutory or regulatory authority, DTSC notified the public that facility owner/operators had to challenge the score for an individual alleged violation at the first opportunity or waive the right to challenge the score, yet DTSC is following a different set of rules for itself and arbitrarily scoring the same event differently during different years of review.

121.    The 2020 Facility VSP Score deprived Hazmat of due process of law as alleged herein by setting arbitrary scores using defective vague regulatory definitions for scoring the so-called "extent of deviation" and "potential for harm" for alleged violations, the improper scoring of alleged violations for which Hazmat was denied a fair opportunity to challenge due to delayed notice to Hazmat of DTSC's allegations resulting from DTSC's failure to provide required post-inspection documentation (or untimely provision of that documentation), and by failing to account for Hazmat's other constitutional challenges to the application of the VSP Regulations to it.

122.    As a result of the erroneous, arbitrary, and vindictive application of the VSP Regulations to Hazmat, and the lack of timely and meaningful administrative review, Hazmat has been denied property interests without due process, suffered regulatory takings without just compensation, and subjected to improper *ex post facto* laws.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

**Fifth Cause of Action for Writ of Mandate**

**(Traditional and, alternatively, Administrative Mandate Against DTSC, Soria and DOES 6 through 10 – 2020 Compliance Tier Assignment)**

123. Petitioner incorporates by reference Paragraphs 1 through 77 and 111 through 122, as though fully set forth below.

124. DTSC, Soria and DOES 6 through 10 proceeded without, or in excess of, jurisdiction, and committed a prejudicial abuse of discretion, by assigning Hazmat to the "Conditionally Acceptable" compliance tier for the 2020 VSP program review. *See* Cal. Code Civ. Proc. § 1094.5(b). They also have failed to act in a manner required by law, leaving Hazmat with no adequate legal remedy. *See* Cal. Code Civ. Proc. § 1085.

125. Hazmat's 2020 compliance tier assignment was illegally and prematurely issued by DTSC, Soria and DOES 6 through 10, prior to any ruling by a Dispute Resolution Officer on Hazmat's 2020 Dispute Document. The issuance of the March 8, 2021 Soria letter that corrected the date on which Hazmat submitted its 2020 Dispute Document, though issued after the Dispute Resolution Officer's decision, does not correct the failings inherent in the score having initially been issued on February 5, 2021. Hazmat already had been issued its final score and compliance tier assignment before the Dispute Resolution Officer's decision, and there was no correction of any of errors in the February 5 ruling.

126. The "Conditionally Acceptable" compliance tier designation rested upon a Facility VSP Score that illegally included scores based on unproven alleged violations at issue in the LA Action that were dismissed and/or settled before trial with no admission of liability, which both deprived Hazmat of the benefit of its settlement agreement, at substantial cost to Hazmat, and improperly converted the alleged violations settled in that case into scorable final violations for VSP purposes, contrary the agency's burden to prove the existence of a violation.

127. The "Conditionally Acceptable" compliance tier designation, by resting on a flawed Facility VSP Score, defied statutory limitations by allowing DTSC to score time-barred and stale alleged violations from beyond the five-year statute of limitations period, and in contravention of the legislative directives authorizing the VSP Regulations.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

128. The "Conditionally Acceptable" compliance tier designation, by resting on a flawed Facility VSP Score, defied statutory limitations by allowing DTSC to score stale alleged violations from beyond the five-year period authorized by the Legislature when it directed DTSC to adopt regulations to implement programmatic reforms.

129. The "Conditionally Acceptable" compliance tier designation, by resting on a flawed VSP score, defied statutory and regulatory limitations by including and scoring violations that were never proven and were only alleged by DTSC, including application of upward score adjustments for alleged repeat violations. Further, Hazmat's 2020 Facility VSP Score (and hence compliance tier assignment) included upwards adjustments for alleged repeat violations based on unproven alleged violations dating back longer than the ten-year look-back allowed under the VSP Regulations.

130. The "Conditionally Acceptable" compliance tier designation, by resting on a flawed VSP score, defied statutory and regulatory limitations by including and scoring alleged violations that did not qualify as Class I violations.

131. The "Conditionally Acceptable" compliance tier designation, by resting on a flawed VSP score, erroneously combined and/or discarded additional no-violation compliance inspections from the scoring process, which would have improved Hazmat's 2020 Final Facility VSP Score and automatic tier classification for 2020.

132. The "Conditionally Acceptable" compliance tier designation, by resting on a flawed VSP score that failed to account for Hazmat's constitutional challenges as alleged herein, denied Hazmat due process of law.

133. The 2020 Facility VSP Score failed to account for rulings made in Hazmat's favor by the 2019 Dispute Resolution Officer. The substantial delay in issuing Hazmat's 2019 Facility VSP Score precluded meaningful review by Hazmat and an opportunity to point out favorable rulings when it filed its 2020 Dispute Document, and denied it the opportunity to redress alleged violations for the 2020 Facility VSP Score. Despite the absence of any applicable statutory or regulatory authority, DTSC notified the public that facility owner/operators had to challenge the score for an individual alleged violation at the first opportunity or waive the right to challenge the score, yet DTSC is following a different set of rules for itself and arbitrarily scoring the same event differently during different years of

review.

134. The 2020 Facility VSP Score deprived Hazmat of due process of law as alleged herein by setting arbitrary scores using defective vague regulatory definitions for scoring the so-called "extent of deviation" and "potential for harm" for alleged violations, the improper scoring of alleged violations for which Hazmat was denied a fair opportunity to challenge due to delayed notice to Hazmat of DTSC's allegations resulting from DTSC's failure to provide required post-inspection documentation (or untimely provision of that documentation), and by failing to account for Hazmat's other constitutional challenges to the application of the VSP Regulations to it.

135. As a result of the erroneous, arbitrary, and vindictive application of the VSP Regulations to Hazmat, and the lack of timely and meaningful administrative review, Hazmat has been denied property interests without due process, suffered regulatory takings without just compensation, and subjected to improper *ex post facto* laws.

**Sixth Cause of Action**

**(Traditional and, alternatively, Administrative Mandate Against DTSC, LaBelle and DOES 6 through 10 – March 5, 2021 Dispute Resolution Officer Decision re 2020)**

136. Petitioner incorporates by reference Paragraphs 1 through 77 and 111 through 135, as though fully set forth below.

137. DTSC, LaBelle and DOES 6 through 10 proceeded without, or in excess of, jurisdiction, and committed a prejudicial abuse of discretion, with the issuance of the Dispute Resolution Officer's ruling on Hazmat's 2020 Dispute Document, which resulted in the automatic assignment of Hazmat to the "Conditional Acceptable" tier designation for 2020. *See* Cal. Code Civ. Proc. § 1094.5(b). They also have failed to act in a manner required by law, leaving Hazmat with no adequate legal remedy. *See* Cal. Code Civ. Proc. § 1085.

138. The March 5, 2021 Dispute Resolution Officer's ruling was improperly issued after DTSC had already issued Hazmat's 2020 Facility VSP Score and compliance tier assignment, making the decision irrelevant. It is also rife with errors.

139. The Dispute Resolution Officer's final ruling blessed the inclusion and scoring of alleged violations at issue in the LA Action that were dismissed and/or settled before trial with no admission of

liability, which both deprived Hazmat of the benefit of its settlement agreement, at substantial cost to Hazmat, and improperly converted the alleged violations settled in that case into scorable final violations for VSP purposes, contrary the agency's burden to prove the existence of a violation.

140. The Dispute Resolution Officer's final ruling defied statutory limitations by allowing DTSC to score time-barred and stale alleged violations from beyond the five-year statute of limitations period, and in contravention of the legislative directives authorizing the VSP Regulations.

141. The Dispute Resolution Officer's final ruling defied statutory limitations by allowing DTSC to score stale alleged violations from beyond the five-year period authorized by the Legislature when it directed DTSC to adopt regulations to implement programmatic reforms.

142. The Dispute Resolution Officer's final ruling defied statutory and regulatory limitations by including and scoring violations that were never proven and were only alleged by DTSC, including application of upward score adjustments for alleged repeat violations.

143. The Dispute Resolution Officer's final ruling defied statutory and regulatory limitations by including and scoring alleged violations that did not qualify as Class I violations.

144. The Dispute Resolution Officer's final ruling erroneously combined and/or discarded additional no-violation compliance inspections from the scoring process, which would have improved Hazmat's 2020 Final Facility VSP Score and automatic tier classification for 2020 had the decision been timely issued.

145. The Dispute Resolution Officer's final ruling summarily rejected Hazmat's constitutional challenges to DTSC's application of the VSP regulations to it, resulting in the denial of due process. As alleged herein, these defects include but are not limited to improper and inconsistent application of subjective regulations for scoring the so-called "extent of deviation" and "potential for harm" for alleged violations, and the improper scoring of alleged violations for which Hazmat was denied a fair opportunity to challenge due to delayed notice to Hazmat of DTSC's allegations resulting from DTSC's failure to provide required post-inspection documentation (or untimely provision of that documentation). They also include the Dispute Resolution Officer's decision upholding individual "final" 2020 scores that differ from the scores on those inspections determined by the 2019 Dispute Resolution Official.

146. As a result of the erroneous, arbitrary, and vindictive application of the VSP Regulations

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

to Hazmat, and the lack of timely and meaningful administrative review, Hazmat has been denied property interests without due process, suffered regulatory takings without just compensation, and subjected to improper *ex post facto* laws.

**Seventh Cause of Action**

**(Takings: California Constitution, Article 1 §19; U.S. Constitution, Fifth Amendment, Against all Defendants)**

147. Petitioner incorporates by reference Paragraphs 1 through 146, as though fully set forth below.

148. Article 1, § 19 of the California Constitution states: "Private property may be taken or damaged for a public use only when just compensation . . . has first been paid . . . to the owner. The Fifth Amendment to the United States Constitution, as applied to the States, has a parallel provision.

149. California and federal law both provide that a property owner who has performed substantial work and incurred substantial liabilities, in good faith reliance upon a permit lawfully issued by the government, acquires property interest in the rights granted by the permit. (*Avco Community Development v. South Coast Regional Commission* (1976) 17 Cal.3d 785; *Dobbins v. City of Los Angles* (1904) 195 U.S. 223.)

150. Once a property owner has secured a vested right in the continued operation of a business in reliance on a legitimately acquired permit, the government may not prevent the property owner from activities undertaken in compliance with the lawful permit.

151. Under California law, a vested right that affects a property owner's livelihood and economic future is deemed a "fundamental vested right," requiring both independent judicial review and a heightened level of scrutiny. Interference with the right to continue an established business is far more serious than denial of the right to establish a business in the first instance. (*Goat Hill Tavern v. City of Costa Mesa* (1992) 6 Cal.App.4th 519.)

152. Petitioner operates its business within California. Petitioner holds existing permits lawfully issued by DTSC. Petitioner has made substantial investments in the purchase, modification, conversion, equipment, enlargement, improvement, management and/or marketing of its property. All of these expenditures were material and substantial, and all were undertaken in good faith reliance on

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

permits issued by DTSC, the applicable regulations and statute of limitations, and the settlement reached in the LA Action.

153. Petitioner's employees have also made long-term financial commitments and other decisions in good faith reliance on the permits including, but not limited to, mortgages, improvement loans, personal relocation, employment contracts and other actions affecting their livelihoods and those of their families.

154. Under its permits, Hazmat has a vested right to continue in business and to use its property freely, without arbitrary or unlawful interference. Defendants' effort to impose punitive costs and/or destroy Hazmat and terminate or take over its business violates Petitioner's vested rights and has caused it substantial damages in an amount to be proven at trial.

**Eight Cause of Action**

**(Denial of Due Process: U.S. Constitution, 14th Amendment, § 1; California Constitution, Article I, § 7 Against all Defendants)**

155. Petitioner incorporates by reference Paragraphs 1 through 154, as though fully set forth below.

156. The 14th Amendment to the United States Constitution provides that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law." Article 1, § 7 of the California Constitution provides the same protection, stating "a person may not be deprived of life, liberty or property without due process of law or denied equal protection of the laws …."

157. DTSC's flawed VSP Regulations and its application of these regulations to Hazmat was done with the intent to deprive Hazmat of its right to use its property and retain its permit.

158. The VSP Regulations prevent any type of fair and impartial review of DTSC's arbitrary scoring decisions in violation of the U.S. Constitution's 14th Amendment and the California Constitution's Article 1 § 7. DTSC's "Dispute Resolution Officer" is an employee of DTSC who made no effort to critically consider Hazmat's 2019 or 2020 Dispute Documents. The VSP Regulations make DTSC prosecutor, judge and jury, whereby DTSC converts every allegation asserted during the past ten years into a conviction and then proceeds to impose costly penalties—forcing Hazmat to turn over

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

control of its operations to a third-party auditor selected by DTSC. This is not the reform of DTSC that the Legislature was seeking.

159. For the foregoing reasons, Hazmat seeks a judicial determination that the VSP Regulations and DTSC's application of them to Hazmat violates the rights secured to Hazmat by the 14th Amendment to the United States Constitution and by Article 1, §,7 of the California Constitution. Hazmat has been injured as a result of Defendants' conduct as alleged herein and are entitled to damages as a result.

**Ninth Cause of Action**

**(Declaratory Relief Against all Defendants)**

160. Plaintiff incorporates by reference Paragraphs 1 through 159, as though fully set forth below.

161. This case presents a justiciable issue, and an actual controversy has arisen and now exists regarding the rights and duties of the parties herein, in that the parties dispute the Final Inspection Violations Scores issued to Hazmat and the compliance tier classification and calculation methodology used by DSTC as alleged herein.

162. The aforementioned VSP Regulations, which permit scoring of time-barred, stale, dismissed, and settled violations; discretionary scoring of other inspections in a way that inflates facility scores at DTSC's whim; tier designations that impose penalties that effectively take control over a business; and untimely administrative review are void for vagueness, contrary to law, allow DTSC determinations and the exercise of jurisdiction in excess of its controlling statutes, violate due process, the Takings Clause, and impose improper *ex post facto* penalties.

163. In light of these flaws, Hazmat respectfully requests an order declaring that the VSP Regulations are unconstitutional both on their face and as applied to Hazmat.

164. Hazmat further respectfully requests a declaration that the DTSC cannot lawfully (i) include settled, abandoned or otherwise unproven alleged violations in Hazmat's VSP score, (ii) score an alleged violation under the VSP program that does not meet the definition of "Class I Violation" in Section 66260.10 (*i.e.*, "that represents a significant threat to human health or safety or the environment"); (iii) apply an upward adjustment for a "repeat" violation based on violations outside the

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

ten-year lookback period of the VSP Regulations; (iv) refuse to include "compliance inspections" meeting the definition of that term in Section 66271.50(a)(1) or DTSC's Inspections Policy, or refuse to count compliance inspections based on the claimed lack of verifying documentation in DTSC's own files; (v) designate Hazmat as "Unacceptable" under the VSP Regulations for the 2019 period; (vi) designate Hazmat as "Conditionally Acceptable" under the VSP Regulations for the 2020 period; (vii) require Hazmat to complete an "audit" or bear any other punishment in order to challenge the 2019 "Unacceptable" compliance tier assignment; (viii) pursue any action based on Hazmat's 2019 "Unacceptable" compliance tier assignment in light of its 2020 compliance tier designation as "Conditionally Acceptable;" and (ix) seek permit revocation under the VSP Regulations.

## VI. PRAYER FOR RELIEF

WHEREFORE, plaintiff and petitioner Hazmat, Inc. prays for judgment in its favor and against defendants and respondents California Department of Toxic Substances Control, Bill Beckman, Maria Soria, Bruce LaBelle, and DOES 1 through 10, as follows:

1. For a judgment that DTSC, Beckman, Soria, LaBelle and DOES 1 through 10, abused their discretion for the reasons stated herein;

2. For issuance of a writ of mandate commanding Respondents to:

a. Set aside and vacate the January 29, 2021 decision of Beckman as the DTSC Dispute Resolution Officer concerning Hazmat's 2019 Dispute Document and directing him and all Respondents to issue a new decision in accordance with the law and facts;

b. Set aside and vacate the 2019 Facility VSP Score issued by Soria on February 5, 2021 to Hazmat, and directing her and all Respondents to issue a new score in accordance with the law and facts;

c. Set aside and vacate the 2019 compliance tier assignment issued February 5, 2021 by Soria that placed Hazmat in the "Unacceptable" compliance tier for 2019, and directing her and all Respondents to issue a new compliance tier assignment in accordance with the law and facts;

d. Set aside and vacate the 2020 Facility VSP Score of 36.45 issued February 5, 2021 by Soria, and directing her and all Respondents to issue a new score in accordance with the

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

law and facts;

e. Set aside and vacate the 2020 compliance tier assignment issued February 5, 2021 by Soria that placed Hazmat in the "Conditionally Acceptable" compliance tier for 2020, and directing her and all Respondents to issue a new compliance tire assignment in accordance with the law and facts; and

f. Set aside and vacate the March 5, 2021 decision of LaBelle as DTSC Dispute Resolution Officer concerning Hazmat's 2020 Dispute Document, and directing him and all Respondents to issue a new decision in accordance with the law and facts.

3. For a declaration that the VSP Regulations on their face and as administered by DTSC, Beckman, Soria, LaBelle and DOES 1 through10 violate Hazmat's rights, including its rights to due process of law and to be free from arbitrary government actions and the illegal taking of property without compensation or due process;

4. For a declaration of the rights and obligations of the parties, including a declaration that:

a. Observations made by DTSC employees or agents during compliance inspections (as defined in DTSC's Inspections Policy) are mere allegations of non-compliance with the law and cannot be scored under the VSP program unless they have been proven in a contested civil or administrative matter by DTSC, including alleged violations that were dismissed before trial in the LA Action (whether through settlement or voluntarily by DTSC);

b. Violations that do not pose a significant threat to human health or safety or the environment cannot be scored under the VSP program because they do not meet the definition of "Class I Violation" in Section 66260.10;

c. DTSC may not impose any upward adjustment for a "repeat" violation based on violations falling outside the ten-year lookback period of the VSP Regulations;

d. DTSC must count all "compliance inspections" that occurred in a ten year period under the VSP Regulations when calculating an inspection violations score, regardless of whether or not DTSC documented the inspection in its own records or provided a facility owner/operator documentation in a timely fashion (or at all) as required by the Hazardous Waste Control Law, regulations implementing the Hazardous Waste Control Law or DTSC Inspections

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Policy;

e. That DTSC's Regulations are unconstitutional and invalid to the extent they rely on violations occurring outside of either the statute of limitations under the VSP Regulations or beyond the five-year lookback authorized by SB 673 and AB 1075;

f. Hazmat did not receive a fair hearing on its 2019 Dispute Document;

g. For the 2019 period under the VSP Regulations, Hazmat's Facility VSP Score shall be zero;

h. For the 2019 period under the VSP Regulations, Hazmat's compliance tier assignment under the VSP Regulations shall be "acceptable;"

i. Hazmat did not receive a fair hearing on its 2020 Dispute Document;

j. For the 2020 period under the VSP Regulations, Hazmat's Facility VSP Score shall be zero;

k. For the 2020 period under the VSP Regulations, Hazmat's compliance tier assignment under the VSP Regulations shall be "acceptable;"

l. Hazmat does not need to challenge DTSC's 2019 "Unacceptable" compliance tier designation because it is moot in light of DTSC's 2020 designation that it is "Conditionally Acceptable;"

m. That Hazmat has suffered and will continue to suffer immediate, imminent, irreparable injury from DTSC's 2019 "Unacceptable" compliance tier classification and participation in the administrative review process and public meeting about that classification;

n. That the VSP Regulations are unconstitutional and invalid to the extent they purported to authorize DTSC to pursue permit revocation based on the VSP program; and

o. That the scoring procedures of Section 66271.51 are invalid and unconstitutional as they lack any defined, discernable or consistent criteria for scoring a violation for "extent of deviation" or "potential harm;"

5. Issuance of a preliminary injunction, to preserve the status quo that prohibits Respondents/Defendants from taking any action based on Hazmat's 2019 compliance tier assignment to the "Unacceptable" tier, including a stay on any requirement for administrative review of that

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

compliance tier assignment under Section 66271.57 until after judgment is rendered in this action;

6. Issuance of a permanent injunction that:

a. Prohibits Respondents/Defendants from taking any action based on Hazmat's 2019 compliance tier assignment to the "Unacceptable" tier;

b. Prohibits Respondents/Defendants from taking any action based on Hazmat's 2020 compliance tier assignment to the "Conditionally Acceptable" tier;

c. Prohibits Respondents/Defendants from making any public statements about Hazmat's scoring or compliance tier assignments under the VSP Program inconsistent with a score of zero for both the 2019 and 2020 review periods, and requiring DTSC to take down from any public resource (including but not limited to any website or social media accounts) any statements to the contrary;

d. Requires Respondents/Defendants to affirmatively reach out and contact all persons that it notified that Hazmat was assigned a Facility VSP Score greater than zero for either 2019 or 2020 or was anything other than an "acceptable" operator for those periods and correct its misstatements about Hazmat and ask that they correct any misinformation published based on DTSC's erroneous determinations, including but not limited to the United States Protection Agency (this must be completed within 15 days of entry of judgment in this matter and proof of compliance filed with the Court and served on all parties no later than 20 days following entry of judgment);

7. Damages according to proof;

8. For attorney's fees and costs as authorized by law; and

9. For such other and further relief as the Court may deem just and proper.

DATED: March 26, 2021

TUCKER ELLIS LLP

By: ______________________________
Marc R. Greenberg
Matthew I. Kaplan
Attorneys for Petitioner
HAZMAT TSDF, INC., formerly known as FILTER RECYCLING SERVICES, INC.

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

**VERIFICATION**

I, Jon Bennet, declare:

I am the President of Hazmat, Inc., and I am authorized to execute this verification on Hazmat's behalf. I have read the foregoing Verified Petition for Writ of Mandate (Traditional and Administrative) and Complaint for Declaratory Relief — Immediate Stay Requested ("Petition") and I am familiar with its contents. The facts stated in the Petition are true of my own knowledge, except as those matters alleged on information or belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and correct. Executed this 26th day of March, 2021, at Rialto, California.

Jon Bennett